Ibrahim Ayesh **KHATEEB**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–86–0184–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 26, 1986.

Will Gray, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Joe Magliolo, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from an order recommitting appellant to Rusk State Hospital (Rusk) after a hearing on the trial court's motion pursuant to Tex.Code Crim.P.Ann. art. 46.03, sec. 4 (Vernon Supp.1986).

On September 4, 1985, the trial court found appellant not guilty by reason of insanity of the offense of attempted murder. Pursuant to article 46.03 section 4(d) of the Texas Code of Criminal Procedure, appellant was ordered transferred to Rusk until such time as the court determined that appellant was eligible for release in accordance with statutory criteria.

Appellant was delivered to Rusk on September 11, 1985. On October 7, 1985, a "hearing" was held in which the court pronounced that appellant would be returned to Rusk. No testimony was heard. The October 10, 1985, order provided that "[t]he defendant is not to be released until, and unless this Court is given notice, under the [Mental] Health Statutes and as provided for under Art. 46.03 [sec.] 4(d)5 which provides for judicial release."

On December 12, 1985, the Superintendent of Rusk, on behalf of the commissioner of the Texas Department of Mental Health and Mental Retardation ("TDMHMR"), stated his opinion, by letter to the court, that appellant was not in need of continued in-patient treatment. He further stated that the TDMHMR Review Board had determined appellant to be not dangerous and that the decision had been upheld by the commissioner of TDMHMR. The court entered an order December 31, 1985, extending appellant's commitment at Rusk from January 6, 1986 to February 6, 1986.

A hearing was held on February 4, 1986, to determine whether appellant continued to meet the criteria for involuntary commitment. The court heard testimony from three psychiatrists, a clinical psychologist, appellant's brother, and appellant. All four mental health professionals testified that appellant no longer met the criteria for involuntary commitment. However, on February 10, 1986, the court entered an order that continued appellant's involuntary commitment at Rusk. The order, in its entirety, reads:

BE IT REMEMBERED that on the 4th day of February, 1986, on this Court's own motion a hearing was conducted to determine whether or not this Court felt Mr. Ibrahim Ayesh Khateeb should continue to be treated at the Rusk State Hospital under Article 46.03 of the Texas Code of Criminal Procedure. After hearing evidence adduced at the February 4th hearing and considering the findings of facts and conclusions of law filed by both the lawyers for the State of Texas and the lawyers representing Mr. Khateeb, it is going to be the Order of this Court that Mr. Khateeb be returned to Rusk State Hospital and that Mr. Khateeb continues to meet the criteria for involuntary commitment and that outpatient supervision is not appropriate, and further that Mr. Khateeb be returned to Rusk State Hospital as an in-patient and that he remain there in accordance with Article 46.03 Section 4(d)(5).

SIGNED AND ENTERED THIS THE 3RD DAY OF MARCH, A.D. 1986

The Code of Criminal Procedure provides that the hearing to determine whether a person acquitted by reason of insanity continues to meet the criteria for *involuntary commitment* is to be conducted pursuant to the Mental Health Code. Tex.Code Crim.P.Ann. art. 46.03, sec. 4(d)(2) and sec. 4(d)(5) (Vernon Supp.1986). The standard of proof required for involuntary commitment is by "clear and convincing evidence." *State v. Addington,* 588 S.W.2d 569 (Tex. 1979).

Under the previous statute in the Mental Health Code, a person was required to be involuntarily committed if the person was a danger to himself or a danger to others. Tex.Mental Health Code art. 5547–51 (Vernon 1958). The statute, as amended in 1983, no longer refers to "involuntary commitment" but refers only to "court-ordered mental health services", which includes in-patient care, i.e., involuntary commitment, and out-patient care. In pertinent part, it provides:

(b) Upon the hearing, the judge or the jury, if one has been requested, shall determine that the person requires court-ordered mental health services only if it finds, on the basis of clear and convincing evidence, that:

(1) the person is mentally ill; and

(2) as a result of that mental illness the person meets at least one of the following additional criteria:

(i) is likely to cause serious harm to himself; or

(ii) is likely to cause serious harm to others; or

(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. If the judge or jury finds that the proposed patient meets at least one of these criteria, the judge or jury shall specify which of the three alternative criteria formed the basis of that decision.

(c) The clear and convincing evidence must include expert testimony and, unless waived, evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function.

Tex.Mental Health Code art. 5547–50(b) (Vernon Supp.1986).

If the judge or jury determines that the person is mentally ill and meets at least one of the criteria, the statute then directs the judge to enter an order for either in-patient or out-patient care, and for any such services to be ordered in the least restrictive setting. Tex. Mental Health Code art. 5547–50(e) (Vernon Supp.1986). Article 46.-03 sec. 4(d)(3) of the Code of Criminal Procedure, while requiring compliance with the Mental Health Code, refers to the criteria for involuntary commitment rather than to the criteria for "court-ordered mental health services." The criminal statute provides:

If, after the hearing, the court finds that the acquitted person meets the criteria for *involuntary commitment,* the court shall order that person to be committed to a mental hospital or other appropriate facility, as designed by the Texas Department of Mental Health and Mental Retardation, for a period not exceeding 90 days. The court may order the acquitted person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an outpatient basis pursuant to the provisions of Subdivision (4) of this subsection. If the court finds that the person acquitted by reason of insanity does not meet the criteria for *involuntary commitment,* the court shall order that person's immediate release. (emphasis added)

·Tex.Code Crim.P.Ann. art. 46.03 sec. 4(d)(3)(Vernon Supp.1986).

We note that the references throughout the record are to the criteria for involuntary commitment, rather than to the criteria for court-ordered mental health services as codified in the Mental Health Code.

■ The record reflects that the burden of proof in this case was improperly shifted to appellant to show, by clear and convincing evidence, that he should have been released. It is the State's burden, however, to show by clear and convincing evidence that the requirements of the statutory standards for court-ordered treatment have been met. *Reed v. State,* 622 S.W.2d 910 (Tex.Civ.App.—Fort Worth 1981, no writ).

The evidence adduced at the hearing was as follows. Dr. Srinivasan testified that appellant was no longer a danger to himself or others, that he did not meet the criteria for involuntary commitment, and that the only purpose served by continued confinement was to keep appellant in custody.

Dr. Nottingham, a consultant to the Harris County Forensic Psychiatric Unit, testified that appellant had been insane at the time of the offense in September of 1984, but that in December of 1985, appellant was not dangerous to himself or others.

He further testified that appellant was "non-psychotic ... and did not meet the criteria for involuntary commitment."

Dr. Jerome Brown also testified that he conducted a psychological testing and evaluation of appellant on January 3, 1986. His conclusion was that appellant did not meet the criteria for involuntary commitment and did not pose a danger to himself or anyone else.

Dr. Rameshwar testified that since appellant's return to the Harris County Jail from Rusk in December of 1985, he had shown a very good response to treatment, and that he had unusual insight into his illness and would likely comply with a prescribed regimen of treatment. He also testified that appellant did not meet the criteria for involuntary commitment.

Appellant's brother testified that appellant's family lives in Midland, and that appellant had sought and received psychiatric help in Midland. The brother further testified that appellant could live with his family in Midland, and work in the brother's grocery store if appellant were released to their custody. The brother indicated that the family would support appellant's compliance with any prescribed psychiatric treatment.

Finally, appellant testified that no one in the jail watches him take his medicine, that the medicine is distributed every day at 3 p.m., and that he takes his medicine every night according to doctor's instructions. He further testified that he has no conflict with his brother and that he would comply with any court-ordered out-patient treatment.

The State produced no witnesses at the hearing and the record is devoid of any testimony that appellant required inpatient treatment. On cross-examination, the prosecutor elicited testimony concerning the general inability of the doctors to predict the future behavior of appellant under different conditions. The doctors testified that appellant should continue taking his prescribed medication.

The State Constitution provides that a person cannot be involuntarily committed without competent expert testimony in support of the commitment. Tex. Const. art. I, sec. 15–a (Vernon 1984); *C.V. v. State,* 616 S.W.2d 441 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

■ The trial court's order failed to specify which of the three criteria formed the basis of its decision, and also failed to specify a period of commitment not to exceed 90 days. Both the basis for and duration of any court-ordered mental health services are required by statute. Tex. Mental Health Code art. 5547–50 (Vernon Supp. 1986). We hold that it was not the appellant's burden to prove that he should be released, but the State's burden to prove by clear and convincing evidence that appellant met the statutory criteria for either involuntary commitment or court-ordered mental health services. We further hold that the State wholly failed to meet this burden and that appellant's immediate release is, therefore, required by law.

The order of the trial court is reversed and the appellant is ordered released.