921 S.W.2d 506 (1996)
In the Matter of R.S.C.
No. 2-95-252-CV.
Court of Appeals of Texas, Fort Worth.
April 25, 1996.
*508 Ronald D. Vanzura, Denton, for Appellant.
Kathleen Walsh, Assistant District Attorney, Denton, for Appellee.
Before DAY, RICHARDS, and HOLMAN, JJ.

OPINION
HOLMAN, Justice.
This is a mental illness case under the Texas Health and Safety Code, sections 571.001-.021. A jury was waived, and after hearing evidence and finding that the Appellant R.S.C. had a mental illness which made it likely that she would cause herself serious harm if not treated, the court signed a judgment on October 19, 1995, for court-ordered temporary mental health services, committing Appellant to the Wichita Falls State Hospital for a period not to exceed ninety days. A separate order, signed the same day, authorized her treatment with psychoactive medication.
Although the ninety day period expired on January 17, 1996, the principle that appellate courts will not decide moot propositions does not apply to appeals from involuntary commitments for temporary hospitalization in a mental hospital for a period not to exceed ninety days. State v. Lodge, 608 S.W.2d 910, 912 (Tex.1980); L.S. v. State, 867 S.W.2d 838, 841 n. 2 (Tex.App.Austin 1993, no writ).
Appellant has filed a brief on appeal, but the State has not. Appellant's first point of error challenges the legal and factual sufficiency of the evidence on which her ninety day commitment was based and argues that the "clear and convincing" standard of proof was not met. Appellant also contends that the evidence was legally and factually insufficient to support the finding that she was incapable of making a rational and informed decision as to whether or not to submit to inpatient treatment and to psychoactive medication for mental illness.
We affirm.
On October 7, 1995, a peace officer took custody of Appellant without a warrant and filed an Application for Emergency Detention on grounds that the officer believed Appellant was mentally ill and that there was imminent risk that she would seriously harm herself or others. See TEX. HEALTH & SAFETY CODE ANN. §§ 573.001, 573.002 (Vernon 1992). This application was in the court's file at the time of the October 19, 1995 hearing and judgment.
On October 6, 1995, a physician at Charter Hospital, Conrad Schmitt, M.D., had examined Appellant for mental illness. See id. § 573.021. In a Certificate of Medical Examination for Mental Illness, the physician made written findings that Appellant was bipolar manic, psychotic, delusional, disorganized and "totally disregarding personal safety." He found that the Appellant was mentally ill and likely to cause serious harm to herself or to others; and that she was unable to make a rational and informed decision as to whether to submit to treatment, and that if not treated, she would continue to suffer severe and abnormal mental, emotional and physical distress and would continue to experience deterioration of the ability to function independently. See id. § 574.011. This certificate was in the court's file at the time of the October 19, 1995 hearing and judgment.
*509 Appellant was not charged with any criminal offense. On October 6, 1995, Mary Semanski, a registered nurse, had made a sworn Application for Temporary Mental Health Services for Appellant on the same grounds that the peace officer alleged. See id. § 574.001 (Vernon Supp.1996). This application was in the court's file at the time of the October 19, 1995 hearing and judgment.
On October 9, 1995, relying on Dr. Schmitt's sworn Certificate of Medical Examination for Mental Illness, an assistant district attorney signed and filed a Motion for Protective Custody of the Appellant until the final hearing on the Application for Temporary Mental Health Services. See id. § 574.021 (Vernon 1992). On October 9, 1995, the court ordered that the Appellant be held in protective custody at Wichita Falls State Hospital, pending a probable cause hearing. See id. §§ 574.022, 574.023.
In a separate order dated October 9, 1995, the court appointed attorney Ronald D. Vanzura to represent Appellant and ordered a hearing on probable cause to be held that day at 3:00 p.m. See id. §§ 574.024 (Vernon 1992), 574.025 (Vernon Supp.1996). That order also set a hearing on the Application for Court-Ordered Mental Health Services (for Appellant) for October 19, 1995, at 3:00 p.m. in the probate court of Denton County. See id. § 574.005 (Vernon 1992). The order required the court clerk to give notice of its contents to the Appellant and to her court-appointed attorney. See id. § 574.006 (Vernon 1992 & Supp.1996). The sheriff served the notice October 9, 1995, at 3:00 p.m.
The probable cause hearing was held October 9, 1995, at the end of which the court signed an order finding that probable cause existed for continuing to hold Appellant in protective custody in the Wichita Falls State Hospital. See id. § 574.026 (Vernon 1992).
On October 13, 1995, Sharon Allen, M.D., a physician at the Wichita Falls State Hospital, examined Appellant for mental illness and, in a sworn certificate, her written diagnosis was "schizophrenia, chronic, paranoid type; rule out mental disorder, NOS, due to seizure or cerebral vascular disease." The certificate also included Dr. Allen's opinion that Appellant is likely to cause serious harm to herself and that the Appellant will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of her ability to function independently and is unable to make a rational and informed decision as to whether to submit to treatment. Further, Dr. Allen's written findings were that the Appellant had a fixed delusion about a silicone chip in her head that the Appellant believed enabled her to receive messages about her children. The same day, Dr. Allen made sworn application for a court order to authorize Appellant's treatment with psychoactive medication. See id. § 574.104 (Vernon Supp.1996). The court scheduled a hearing on that application for October 19, 1995, at 3:00 p.m. and had written notice given to the Appellant and her attorney. Dr. Allen's certificate was in the court's file at the time of the October 19, 1995 hearing and judgment.
The October 19, 1995 hearing was attended by Appellant, her court-appointed attorney and a Dallas physician. The physician, James G. Shupe, M.D., testified that he had examined Appellant that day and "what she said didn't seem to make much sense to me." Dr. Shupe testified that Appellant told him she is the daughter of Princess Grace and Prince Rainier "and that somehow from there she had ended up with President Rooseveltwe didn't know which oneand had gone off with the caretaker and then been found by Leonard Sanders whoand it just kept going. And that Princes [sic] Grace Kelly was a Navy SEAL and that's howsomehow that's how she got to President Roosevelt." Dr. Shupe testified that he diagnosed Appellant's illness as "[p]sychotic disorder not otherwise specified," for which she needs inpatient treatment with psychoactive medication. He also testified that Appellant is "invested in a delusional belief, [that] will become fixated more and more," and that she does not have the capacity to make a decision regarding whether to take the treatment or medication, and that the treatment's benefits to Appellant would outweigh the risks "by a large margin."
The evidence before the court at the hearing included Dr. Shupe's Certificate of Medical *510 Examination sworn to and signed by him on the date of the hearing. The certificate included Dr. Shupe's diagnosis of the Appellant, and his written opinion that she is mentally ill and likely to cause serious harm to herself and will, if not treated, continue to suffer severe and abnormal mental, emotional and physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether to submit to treatment.
Appellant testified that she did not think she had ever been psychotic. She believed the medicine would make her sick and would not keep her healthy. She also testified that one silicone chip, no longer in her head, had been removed by a "gold treatment" that caused three explosions in the back of her head, damaging "the material that holds your brain in place." She testified that "customers at Foley's will vouch for me on that," and that the only remaining chip in her head has been there for twenty years without causing any trouble. Appellant finished her testimony by saying she would like to have the court sign an order "giving me access to my funds with J.B. Hunt that was set up under [name], the name I was in the children's home under, usingunder [name], which was Princess Grace's maiden nameI mean, married name and Prince Ranier's first name."
When cross-examined by Appellant's attorney, Dr. Shupe testified that his diagnosis is "in line" with Dr. Allen's diagnosis of the Appellant, and that, aside from seeing Appellant sit calmly on the day of the hearing, he saw nothing rational in any of her statements or behavior. Dr. Shupe concluded that "[Appellant did not] develop a delusional system this large and this fixed, this invested in, over just a few days. It's been there for a while."
At the October 19, 1995 hearing, the court took judicial notice of the contents of the court's file, including preliminary proceedings. At the end of the hearing, the court ordered the administration of psychoactive medication to Appellant, after finding "on clear and convincing evidence," including Dr. Shupe's testimony, that such treatment was in her best interest and that she lacked the capacity to make a decision about such treatment.
In a separate judgment signed October 19, 1995, the court also granted the Application for Court-Ordered Temporary Mental Health Services, finding that the Certificates of Medical Examination for Mental Illness by Dr. Allen and Dr. Shupe, and the allegations of Appellant's mental illness and likelihood of causing herself harm, were in compliance with the Texas Health and Safety Code. The judgment includes the court's findings that the facts alleged in the Application for Court-Ordered Temporary Mental Health Services are true and correct; that Appellant is mentally ill and likely to cause serious harm to herself; and that if not treated, Appellant will continue to suffer severe and abnormal mental, emotional or physical distress and deterioration of ability to function independently.
Under her first point of error, Appellant argues that in less than one month psychiatrists Schmitt, Allen and Shupe examined her and rendered three different medical opinions with conflicting diagnoses about her condition. She contends that those medical opinions create a question of legal sufficiency of the evidence.
The Texas Health and Safety Code does not authorize a judge or jury to determine that a proposed patient requires court-ordered mental health services, unless the court or jury finds from clear and convincing evidence that (1) the proposed patient is mentally ill and, (2) as a result of that illness is (A) likely to cause serious harm to himself, (B) likely to cause serious harm to others, or (C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety Code Ann. § 574.034(a) (Vernon 1992). The judge or jury must specify which criterion forms the basis for ordering temporary mental health services. Id. § 574.034(b).
To meet the clear and convincing evidence standard, the evidence must include expert *511 testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of ability to function. Id. § 574.034(c).
Long before the Legislature enacted the present code, the Texas Supreme Court adopted the "clear and convincing evidence" standard of proof to govern proceedings brought for the purpose of committing a person to a state mental hospital for an indefinite period, defining that standard as the measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. State v. Addington, 588 S.W.2d 569, 570 (Tex.1979). The clear and convincing evidence standard is somewhere between the preponderance standard of civil cases and the reasonable doubt standard of criminal cases. Id.
Because Appellant did not have the burden of proof in this case, the first point of error's complaint that the evidence against her was legally insufficient is a "no evidence" point or an assertion that the State failed to carry its burden as a matter of law. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.1983); Gooch v. American Sling Co., Inc., 902 S.W.2d 181, 183-84 (Tex.App.Fort Worth 1995, no writ).
In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993).
A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. Juliette Fowler Homes, Inc. v. Welch Assoc., Inc., 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of a vital fact. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992).
The first point of error's challenge to the factual sufficiency of the evidence against her requires us to review all of the evidence in the case and determine whether it is so weak, or whether evidence to the contrary is so overwhelming, that the judgment should be set aside as clearly wrong and manifestly unjust. See Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g).
We have reviewed all of the evidence under the standards governing our consideration of challenges to both the factual and legal sufficiency of evidence. We hold that the totality of the evidence tends to confirm the likelihood of serious harm to the Appellant and tends to confirm her proposed distress and deterioration of ability to function, and tends to confirm that she was incapable of making a rational and informed decision as to whether to submit to inpatient treatment and psychoactive medication. We hold that the requirement of clear and convincing evidence was met. See TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (Vernon 1992).
The expert medical opinions that were before the court not only contain the diagnoses of the physicians, but those opinions, and the experts' recommendations, are supported by a showing of the factual bases on which they are grounded. See Moss v. State, 539 S.W.2d 936, 949-51 (Tex.Civ.App.Dallas 1976, no writ). There is no medical evidence proving that the opinions of psychiatrists Schmitt, Allen and Shupe are in conflict, and Dr. *512 Shupe testified that his diagnosis and Dr. Allen's are "in line." Our review of all of the evidence and the record persuades us that the evidence is legally sufficient to support the findings recited in the judgment. We are not persuaded that the evidence is so weak as to be clearly wrong or manifestly unjust.
The two-page judgment in this case was either typed or prepared on a word processor, and its text includes the names of witnesses and the attorneys, summarizes the evidence, and states the court's findings. We conclude that the first page's text reasonably informs its readers that the court has heard the Application for Court-Ordered Mental Health Services relative to Appellant; and that the Application is based on allegations that she is mentally ill; and that as a result of the alleged illness, the court has considered the grounds available to support court-ordered mental health services as they relate to Appellant. The judgment recites the findings of those grounds disjunctively, and the findings are the identical criteria that section 574.034(a) lists disjunctively.
In the judgment, each of the three available grounds is preceded by a blank, and the trial judge has entered a check-mark in only two of the three blanks, to indicate the two criteria that the applicant advocated and the court considered. The criteria checked-marked were:
(1) √ likely to cause serious harm to self;... or (3) √ will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.
The first page then informs its readers that the court finds that all necessary parties have been served and notified of the time and place of the hearing; that Dr. Allen and Dr. Shupe are licensed physicians who have timely filed proper Certificates of Medical Examination for Mental Illness stating that Appellant is mentally ill; and that all terms and provisions of the Texas Health and Safety Code have been met and that, after considering all of the evidence and testimony, the court finds that the facts alleged in the application are true and correct.
The judgment's second (final) page informs its readers that the court finds Appellant is mentally ill, and that as a result of that mental illness the court makes other findings. The text then informs the readers that three other specific findings, listed disjunctively, are possible, depending on the evidence heard. The three are numbered, identical to the three available grounds recited on the judgment's first page, and each of the three potential findings is preceded by a blank. The trial judge has entered a checkmark in only two of the three blanks, to indicate the court's findings on each specific statutory criterion that forms the basis for the decision. The findings check-marked were:
[Appellant] (1) √ is likely to cause serious harm to self; ... or (3) √ will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.
Although not cited by Appellant's brief, we are aware that two courts of appeals have held that a "fill-in-the-blanks" commitment order in which the trial court disjunctively states the grounds for the patient's commitment does not meet statutory requirements. See In re J.J., 900 S.W.2d 353, 356 (Tex. App.Texarkana 1995, no writ) (decided under the TEX. HEALTH & SAFETY CODE ANN. §§ 571.001-.021); In re J.S.C., 812 S.W.2d 92, 96 (Tex.App.San Antonio 1991, no writ) (decided under the former Texas Mental Health Code, TEX.REV.CIV.STAT.ANN. art. §§ 5547-1 to -100, repealed by Acts 1991, 72nd Leg., ch. 567, eff. Sept. 1, 1991). We do not know whether Appellant's judgment-form is what those courts of appeals meant by the term "fill-in-the-blanks," or whether the forms used in those cases were unlike the judgment in this case, but we decline to apply the holdings of J.J. or J.S.C. to the facts of this case.
*513 The code provision that defines the evidentiary standard and prescribes the trial judge's duty to specify which criterion forms the basis for Appellant's commitment, lists the three available criteria disjunctively and does not require an affirmative finding on each criterion nor does it prohibit disjunctive findings. The statute only requires that there be clear and convincing evidence to support the court's findings, that the court specify any criterion relied on as a basis for the ninety day commitment, and any one of the statutory criteria may support a court's decision. See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2), (b) (Vernon 1992).
For these reasons, we disagree with the Texarkana court's conclusion that the statute's disjunctive criteria must be stated conjunctively in the judgment if more than a single criterion is the basis for the decision. See In re J.J., 900 S.W.2d at 356-57.
We believe the holding of In re J.J. is distinguishable from the present case, because the Texarkana court found that the J.J. trial court judgment "did not specify which criterion it was using for the commitment." See id. at 356. Unlike the present case, J.J. complained on appeal that the trial court erred in failing to "fill-in-the-blanks" of the judgment with specific findings as to which of the three statutory criteria formed the basis for court-ordered mental health services and commitment, and the Texarkana Court of Appeals found that the trial court's judgment "[did not] explain which criterion it used or whether it used all three." Id. at 356-57. Further, for reasons we have already given, we disagree with the Texarkana court's conclusion that when all three statutory criteria are the bases for a commitment, the judgment must state them conjunctively. Id.
We also believe the holding of In re J.S.C. is distinguishable from the present case. The J.S.C. judgment found all three statutory criteria as the bases for the court's decision, but recited those findings disjunctively on a "fill-in-the-blanks" judgment form. See In re J.S.C., 812 S.W.2d at 96. The San Antonio Court of Appeals concluded that such a judgment must state its findings conjunctively. Id.
Both the Texarkana and San Antonio courts rely upon Khateeb v. State, 712 S.W.2d 881, 885 (Tex.App.Houston [1st Dist.] 1986, no writ) for the proposition that the trial court must state its findings of the statutory criteria for commitment conjunctively. See In re J.J., 900 S.W.2d at 356; In re J.S.C., 812 S.W.2d at 96. However, Khateeb also is distinguishable from the present case. That opinion does not mention a "fill-in-the-blanks" form of judgment and does not discuss conjunctive versus disjunctive findings.
In Khateeb, four physicians testified that he was no longer a danger to himself or to others and did not meet the criteria for involuntary commitment. See Khateeb, 712 S.W.2d at 884. As the Houston Court of Appeals noted, "[t]he State produced no witnesses at the hearing and the record is devoid of any testimony that Appellant required inpatient treatment." Id. The opinion observed that the trial court's order for Khateeb's commitment failed to specify which of the three statutory criteria formed the basis for its decision and failed to specify a period of commitment not to exceed ninety days, and that the State wholly failed to meet its burden of proving its case by clear and convincing evidence. Id. at 885.
The facts of Khateeb bear no resemblance to those of the present case, but we address Khateeb because it is cited by the Courts of Appeals in Texarkana and San Antonio as the foundation for the sweeping conclusion that in court-ordered mental health services and commitment cases, a "fill-in-the-blanks" judgment-form must state findings of the statutory criteria conjunctively, not disjunctively.
We agree with the principle stated by the San Antonio Court of Appeals, that "[a] court contemplating the drastic curtailment of a person's liberty by involuntarily committing him to hospitalization, should explain the specific bases for its decision." In re J.S.C., 812 S.W.2d at 96. But we are not persuaded that this principle requires reversal of a "fill-in-the-blanks" judgment, despite its support by clear and convincing evidence, merely because the judgment does not conjunctively recite the trial court's findings on *514 criteria that are enumerated disjunctively in the statute. Under the facts and clear and convincing evidence of our case, a reversal on those grounds would elevate form over substance.
Accordingly, we hold that the form and content of the October 19, 1995 judgment complies with section 574.034(b) by clearly explaining the specific statutory bases for the trial court's decision, and that the evidence is legally and factually sufficient to support the court's findings and judgment. Point of error number one is overruled.
The second point of error asserts that the trial court erred by finding that Appellant lacked the capacity to make a decision as to whether she would submit to psychoactive medication. She argues that even if she has mental illness, she should be allowed to seek or refuse treatment as a personal decision without state intervention.
As we have seen, Appellant is a patient subject to an order for temporary mental health services under section 574.034, and the court separately ordered that she be administered psychoactive medication after hearing clear and convincing evidence that she lacks the capacity to make a decision regarding the administration of the medication. The medication order is authorized by TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (Vernon Supp.1996), and in determining that there is a need for psychoactive medication, the court is required to consider the following:
(1) the patient's expressed preferences regarding treatment with psychoactive medication;
(2) the patient's religious beliefs;
(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;
(4) the consequences to the patient if the psychoactive medication is not administered;
(5) the prognosis for the patient if the patient is treated with psychoactive medication;
(6) alternatives to treatment with psychoactive medication.
TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (Vernon Supp.1996).
The evidence in the record, which we have discussed already, clearly demonstrates that in determining the need for Appellant's psychoactive medication, the court considered all of the factors except Appellant's religious beliefs, on which she offered no evidence.
We hold that because there was clear and convincing evidence that the Appellant lacked the capacity to make a decision regarding the administration of psychoactive medication, the court was not required to defer to Appellant's expressed preferences on the subject. We hold that the court met the obligations imposed on it by section 574.106(b), and that the court's findings and order did not violate the rights accorded to the Appellant by TEX. HEALTH & SAFETY CODE ANN. § 576.021 (Vernon 1992), to receive mental health care in the least restrictive appropriate setting available that is consistent with the patient's needs.
The second point of error is overruled.
The third point of error asserts that the court failed to make findings under section 574.106(b) and failed to supply Appellant and her attorney with the written notifications required by section 574.106(g).
The October 19, 1995 Order to Authorize Administration of Psychoactive Medication is separate from the October 19, 1995 judgment. The two-page Order for psychoactive medication includes these findings:
That on file with the Court in this cause is a verified Application by the [Appellant's] physician, James G. Shupe, who has examined [Appellant] and that the physician therein states the opinion and the detailed basis that [Appellant] is in need of psychoactive medication but lacks the capacity to make a decision regarding administration of said medication and it is in [Appellant's] best interest to have psychoactive medication; and
That after considering all of the evidence, including the Application and the testimony of Dr. James G. Shupe, M.D., the expert, who presented competent medical or psychiatric testimony, it appears to the Court that the allegations of the Application *515 are true and correct and are supported by clear and convincing evidence. It is therefore determined that treatment with the proposed medication is in the best interest of [Appellant] and [Appellant] lacks the capacity to make a decision regarding administration of said medication and that the same shall be ordered.
The Court relied on the following evidence:

Contents of file including CME/ATR and live testimony of physician (Shupe) and demeanor of [Appellant] at hearing; testimony of [Appellant] at hearing [;] and makes its determination for the following reasons:
The Court finds that the benefits to [Appellant] from taking the medication far outweigh the risks and that the consequences are severe for the failure to do so. The Court finds further that the proposed medication is standard of care and [Appellant's] prognosis is fair to good with medication and poor without it. The Court further finds there are no reasonable acceptable alternatives within standard of care. Sufficient cause exists to override [Appellant's] expressed preferences against the medication.
We disagree with Appellant's contention that the findings required of the trial court are the six factors listed in section 574.106(b). The court is required to take those factors into consideration, but there is no statutory requirement to express those factors as findings. The only findings that must be made are those listed in section 574.106(a), and that section does not require those findings to be expressed in writing in a document aside from the Order. We hold that the statutory findings of section 574.106(a) were made in the Order, and the court had no duty to make findings under section 574.106(b).
Next, Appellant appears to argue that, regardless of whether she asks for notification, section 574.106(g) mandates that the court furnish her a notice that includes a statement of the evidence relied upon and the reasons for the court's determinations about her psychoactive medication. We read no such duty in section 574.106(g). We construe that section as merely conferring on Appellant and her attorney an entitlement to obtain a copy of such notification if they want it.
It is clear that a statement of the evidence relied upon by the court and the reasons for its determinations are written in the court's October 19, 1995 Order. The record is plain that Appellant and her attorney have been furnished copies of the Order and the rest of the record, and we hold that their entitlement under section 574.106(g) was honored by the court.
Point of error number three is overruled.
The October 19, 1995 judgment for Court-Ordered Temporary Mental Services and the October 19, 1995 Order to Authorize the Administration of Psychoactive Medication are affirmed.