TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00703-CV






In the Matter of E. M.









FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY 


NO. 6326, HONORABLE JOHN BARINA, JUDGE PRESIDING 






PER CURIAM


 This case is an appeal from a December 6, 1996, order involuntarily committing E.M. to
Austin State Hospital for temporary mental health services pursuant to Texas Health and Safety Code
section 574.034. Tex. Health & Safety Code Ann.§ 574.034 (West 1992 & Supp. 1997). We will affirm
the order of temporary commitment.

 Texas Health and Safety Code section 574.034 provides that a court may order temporary
mental health services if a judge or jury finds, by clear and convincing evidence, that the proposed patient
is mentally ill, and as a result of that mental illness the proposed patient (1) is likely to seriously harm
himself, (2) is likely to seriously harm others, or (3) will, if not treated, continue to suffer severe and
abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to
function independently, and is unable to make a rational and informed decision as to whether or not to
submit to treatment. In this case, the court found that all three of the criteria had been met. Id.; see also
Addington v. Texas, 441 U.S. 418, 431-342 (1979) (heightened standard such as "clear and convincing"
necessary since liberty interest implicated). Since the criteria are disjunctive, evidence supporting any one
of the three is sufficient to affirm the commitment.

 The first issue is whether to summarily affirm the judgment on the basis that appellant raises
no error. Although the instant proceeding is a civil cause, E.M.'s court-appointed counsel has filed a brief
similar to that which Anders v. California, 386 U.S. 738 (1967), requires court-appointed counsel
representing criminal defendants to file if he or she has determined the appeal is frivolous. (1) E.M.'s counsel
concludes in his brief that the appeal is without merit and that E.M.'s rights and interests have been
adequately protected. Cf. Currie v. State, 516 S.W.2d 684 (Tex. Crim. App. 1974). He advised E.M.
of his conclusions, gave her a copy of his brief, and advised her that she could file a pro se brief or obtain
other counsel. (2) She has done neither. (3)

 We find no cases holding that the filing of an Anders-type brief is required in an appeal
from an involuntary commitment order when a court-appointed attorney determines that the appeal has no
merit. Under the ordinary rules of civil procedure, we would affirm because appellant has not presented
any points of error for review or any argument and authorities in support thereof. See Tex. R. App. P.
74(d), (f); Fambrough v. Wagley, 169 S.W.2d 478, 482 (Tex. 1943); Helle v. Hightower, 735 S.W.2d
650, 654 (Tex. App.--Austin 1987, writ denied); see also Vawter v. Garvey, 786 S.W.2d 263, 264
(Tex. 1990) (court of appeals cannot reverse on unassigned error).

 However, we note the similarities between involuntary commitment and incarceration. Both
involve involuntary loss of liberty and possible stigma. Vitek v. Jones, 445 U.S. 480, 491-492 (1980);
Addington, 441 U.S. at 425-26. Therefore, the defendant in an involuntary commitment proceeding has
due process rights not normally implicated in civil proceedings. Addington, 441 U.S. at 425-26; Moss
v. State, 539 S.W.2d 936, 941 (Tex. Civ. App.--Dallas 1976, no writ). But those rights are not
necessarily co-extensive with the rights accorded criminal defendants. Addington, 441 U.S. at 427-431
(rejecting argument that need for commitment must be proven "beyond a reasonable doubt"). Accordingly,
without holding that it is necessary, we will use the Anders analysis by analogy.

 A court reviewing a criminal conviction has two obligations upon receipt of an Anders brief. 
See Anders, 386 U.S. at 744. First, the court must satisfy itself that the attorney has provided the client
with a diligent and thorough search of the record for any arguable claim that might support the client's
appeal. Id. The court may order the attorney to rebrief if the brief is inadequate. Stafford v. State, 813
S.W.2d 503, 510 (Tex. Crim. App. 1991); Johnson v. State, 885 S.W.2d 641, 645 (Tex. App.--Waco
1994, pet. ref'd). Second, the court must determine whether counsel has correctly concluded that the
appeal is frivolous by examining the record itself. Anders, 386 U.S. at 744-45; Stafford, 813 S.W.2d at
511. If the court determines that the appeal is not frivolous, it must abate the appeal to allow the trial court
to appoint new appellate counsel. Penson v. Ohio, 488 U.S. 75, 85 (1988); Stafford, 813 S.W.2d at
511; Bruns v. State, 924 S.W.2d 176, 177 n.1 (Tex. App.--San Antonio 1996, no pet.). 

 Appellant's attorney timely perfected an appeal, provided a statement of facts, and filed
a brief. The brief summarizes the evidence, includes record cites, and concludes that the testimony is
sufficient to meet the statutory requirements for commitment. Its reference to legal authority is slim, but,
given the legal questions presented, is adequate. Accordingly, it meets the standards for an Anders brief.

 We have examined the record and find that it supports counsel's conclusion. The record
shows that the commitment proceeding met the statutory requirements. E.M. was present, was represented
by counsel, cross-examined witnesses, and testified on her own behalf. See Tex. Health & Safety Code
Ann. § 574.024 (West 1992) (proposed patient and attorney shall have opportunity to appear and present
evidence). Further, the evidence adduced supports the trial court's findings.

 The record shows two physician's certificates of examination for mental illness. In addition,
Dr. Patrick W. Clapper, an evaluating psychiatrist, testified that E.M. had schizo-affective bipolar disorder
with psychotic features and needed temporary commitment.

 Dr. Clapper based his conclusion that E.M. needed temporary commitment on the fact that
she had been hospitalized a month before the hearing for a drug overdose and that recent examinations
revealed that she was delusional, unable to sleep, hyperverbal, had increased "goal directed activities," and
was unable to "slow down." During the examination, E.M. threatened to shoot him if the court proceedings
did not "go her way." Further, E.M. told him that she had threatened to burn her mother's house, that she
had threatened to kill her sister and her sister's children, and that she continued to have suicidal thoughts. 
Dr. Clapper testified that E.M. had been noncompliant with medication in the past and needed the
medication to stabilize her condition.

 Carmen Keen, a case manager with Central Counties Center for Mental Health and Mental
Retardation, testified that E.M. had been decompensating over the last few weeks and was no longer willing
to contract not to harm herself or other people. Ms. Keen also testified that E.M. was generally
noncompliant about taking medication.

 Doyle Dickens, a sheriff's deputy, testified that E.M. had complained about injuries to her
hands and glass in her feet. The complaints were apparently delusional.

 E.M. testified on her behalf. She testified that she had no place to live. She also testified
that in the past she would take "[a]ny kind of pills I can buy over the counter, any kind of pills they
give--nerve pills or pain pills or Zantac or Motrin or Tylenol. I take about, I don't know, I just take
handful and swallow handful and swallow so I pass out." She testified that she took the pills deliberately
to kill herself. 

 Conversely, E.M. testified that she no longer wanted to kill herself, and had not actually
intended to harm her doctor, mother, sister, or sister's family. However, the trial court evaluates the
credibility of conflicting evidence. See Meszick v. State, 920 S.W.2d 427, 430 (Tex. App.--Houston
[1st Dist.] 1996, no writ). Based on the expert testimony and the factual basis for it, and the supporting
testimony of the case manager and deputy, the court could have reasonably found by clear and convincing
evidence that E.M. was mentally ill and likely to seriously harm herself or others. See In re R.S.C., 921
S.W.2d 506, 511 (Tex. App.--Fort Worth 1991, no writ); Jones v. State, 602 S.W.2d 132, 135 (Tex.
Civ. App.--Fort Worth 1980, no writ).

 Appellant has failed to demonstrate error in the trial court's order. Accordingly, we affirm
the order of temporary commitment.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: May 1, 1997

Do Not Publish

1. A person who faces involuntary commitment is entitled to appointed counsel. Tex. Health & Safety
Code Ann. § 574.024 (West 1992).
2. We note the apparent incongruity of offering a person adjudicated as mentally ill the opportunity to
represent himself or herself. However, courts from other jurisdictions have held that a person facing a
commitment hearing may waive his or her statutory right to appointed counsel. See, e.g., United States
v. Veltman, 9 F.3rd 718 (8th Cir. 1993).
3. Appellant's counsel did not move to withdraw as counsel, as is ordinarily done when filing an Anders
brief in a criminal case. Withdrawal is permitted because a defendant's right to assistance of counsel does
not include the right to have an attorney urge frivolous or unmeritorious claims. Penson v. Ohio, 488 U.S.
75, 83-84 (1988); see also McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988).


d cites, and concludes that the testimony is
sufficient to meet the statutory requirements for commitment. Its reference to legal authority is slim, but,
given the legal questions presented, is adequate. Accordingly, it meets the standards for an Anders brief.

 We have examined the record and find that it supports counsel's conclusion. The record
shows that the commitment proceeding met the statutory requirements. E.M. was present, was represented
by counsel, cross-examined witnesses, and testified on her own behalf. See Tex. Health & Safety Code
Ann. § 574.024 (West 1992) (proposed patient and attorney shall have opportunity to appear and present
evidence). Further, the evidence adduced supports the trial court's findings.

 The record shows two physician's certificates of examination for mental illness. In addition,
Dr. Patrick W. Clapper, an evaluating psychiatrist, testified that E.M. had schizo-affective bipolar disorder
with psychotic features and needed temporary commitment.

 Dr. Clapper based his conclusion that E.M. needed temporary commitment on the fact that
she had been hospitalized a month before the hearing for a drug overdose and that recent examinations
revealed that she was delusional, unable to sleep, hyperverbal, had increased "goal directed activities," and
was unable to "slow down." During the examination, E.M. threatened to shoot him if the court proceedings
did not "go her way." Further, E.M. told him that she had threatened to burn her mother's house, that she
had threatened to kill her sister and her sister's children, and that she continued to have suicidal thoughts. 
Dr. Clapper testified that E.M. had been noncompliant with medication in the past and needed the
medication to stabilize her condition.

 Carmen Keen, a case manager with Central Counties Center for Mental Health and Mental
Retardation, testified that E.M. had been decompensating over the last few weeks and was no longer willing
to contract not to harm herself or other people. Ms. Keen also testified that E.M. was generally
noncompliant about taking medication.

 Doyle Dickens, a sheriff's deputy, testified that E.M. had complained about injuries to her
hands and glass in her feet. The complaints were apparently delusional.

 E.M. testified on her behalf. She testified that she had no place to live. She also testified
that in the past she would take "[a]ny kind of pills I can buy over the counter, any kind of pills they
give--nerve pills or pain pills or Zantac or Motrin or Tylenol. I take about, I don't know, I just take
handful and swallow handful and swallow so I pass out." She testified that she took the pills deliberately
to kill herself. 

 Conversely, E.M. testified that she no longer wanted to kill herself, and had not actually
intended to harm her doctor, mother, sister, or sister's family. However, the trial court evaluates the
credibility of conflicting evidence. See Meszick v. State, 920 S.W.2d 427, 430 (Tex. App.--Houston
[1st Dist.] 1996, no writ). Based on the expert testimony and the factual basis for it, and the supporting
testimony of the case manager and deputy, the court could have reasonably found by clear and convincing
evidence that E.M. was mentally ill and likely to seriously harm herself or others. See In re R.S.C., 921
S.W.2d 506, 511 (Tex. App.--Fort Worth 1991, no writ); Jones v. State, 602 S.W.2d 132