**Affirmed and Memorandum Opinion filed November 5, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00012-CV
## NO. 14-13-00014-CV

---

**T.N. AKA T.D., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause Nos. MH4182 & MH4182A**

---

## M E M O R A N D U M   O P I N I O N

In a single issue, appellant T.N. challenges the factual sufficiency of the evidence supporting an order permitting the involuntary administration of psychoactive medication. He argues that the probate court failed to address specifically his religious objection to involuntary medication, thereby violating section 574.106(b) of the Texas Health and Safety Code. Appellant contends that his religious objection required the trial court not only to consider his religious

beliefs, but also to make an on-the-record finding as to those beliefs. We disagree because the Health and Safety Code contains no requirement for such findings, and factually sufficient evidence supports the trial court's order. We therefore affirm.

## BACKGROUND

Appellant is a twenty-year-old male diagnosed with catatonic schizophrenia. The State, for appellant's "best interest and protection," filed a motion to place him in protective custody and applied for an order allowing the administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. Ch. 574 (West 2010 & Supp. 2013). The trial court held hearings on both the protective-custody motion and the application to administer psychoactive medication.[1]

At appellant's protective-custody hearing, Dr. Michael Stone, a board-certified psychiatrist and appellant's attending physician, testified that appellant had been hospitalized on at least two prior occasions. In each of those instances, appellant refused medications and was discharged. When appellant came to Dr. Stone's hospital, he was in a catatonic state of extreme withdrawal. He held postures for long periods of time without moving, he refused to communicate with medical staff, and he would not eat or drink. Dr. Stone worried this immobility would compromise appellant's blood flow and break down his muscles. The doctor administered medications on an emergency basis, and some of the symptoms began to remit. Without medication, according to Dr. Stone, appellant could have died. At the same hearing, appellant stated that he believed neither that he was ill nor that he should be administered psychoactive medications.

---

[1] The protective-custody motion and medication application were assigned separate cause numbers in the trial court, and because appellant appealed the final orders in both cases, received separate cause numbers in this Court as well. Appellant filed identical briefs in both appeals, however, and his single issue challenges only the medication order. We therefore limit our analysis to that issue.

In the medication hearing that followed, appellant indicated a religious objection to psychoactive medication. When asked why he did not wish to take the recommended medication, appellant responded, "[t]he voice of God lets me know to refuse all medications." He went on to say that God was not commanding him to refuse medication, but rather "asking and convincing" him to do so.

Appellant testified that he is a medical missionary and should rely only on natural remedies. When asked if he understood that upon admission to the hospital he was severely ill, with lab tests showing risk of muscle and kidney damage, appellant attributed his state to not being fed and being held against his will. When asked whether he believed religious consequences would befall him were he forced to take medication, appellant answered "No. It's not like I'm going to be wiped out or anything like that. It's just I have free choice. I have the free will and free choice not to do that."

The trial court issued an order allowing psychoactive medication to be forcibly administered to appellant. It indicated that "after considering all of the evidence," including stipulated medical evidence and Dr. Stone's testimony, it found appellant was "incapable of making medical treatment decisions" and that "it would be in [his] best interest to be treated with psychoactive medication."[2] This appeal followed. *See* Tex. Health & Safety Code Ann. § 574.108(a) (West 2010) (authorizing appeal of order).

---

[2] The trial court's medication order expired near the end of March 2013, but its expiration does not moot this appeal. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) ("The expiration of the time for which [the patient] was ordered to receive services does not require the appeal to be dismissed for mootness."); *State v. Lodge*, 608 S.W.2d 910, 911–12 (Tex. 1980) (appeal of civil commitment not moot because of "collateral consequences" exception to mootness doctrine).

ANALYSIS

Appellant does not challenge the probate court's order on legal sufficiency grounds. Nor does he request relief under the First Amendment of the United States Constitution or Article I, Section 6 of the Texas Constitution. He also presents no argument based on the Texas Religious Freedom Restoration Act.[3] Instead, his sole issue on appeal is the factual sufficiency of the evidence submitted to the trial court. And even within that issue, appellant's chief complaint is that the trial court failed to adequately consider his "religious beliefs" as the Health and Safety Code requires. *See* Tex. Health & Safety Code Ann. § 574.106(b)(2) (West 2010). We disagree.

## I.    Standard of review

An order to administer psychoactive medication requires clear and convincing evidence that, among other things, "the proposed medication is in the best interest of the patient." *Id.* § 574.106(a-1)(1). We will sustain a factual sufficiency challenge to the order if the fact finder "could not reasonably have formed a firm conviction or belief" that medication is in the patient's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

In determining whether a fact finder could reasonably form a firm conviction or belief, we must give due consideration to any evidence the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d 256,

---

[3] In its brief, the State argues that the trial court complied with the Texas Religious Freedom Restoration Act (Act). *See* Tex Civ. Prac. & Rem. Code Ann. § 110.004 (West 2011). Appellant has never mentioned this Act, however. Thus, we have no occasion to address the Act in this case. *See Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 672 n.10 (Tex. App.—Austin 2005, no pet.) (when party "did not raise the [ ] Act below in its pleadings, summary-judgment response, or [trial] briefing" and made "only a single passing reference to [the Act] in its [appellate] brief," court had no occasion to consider the Act's application).

266 (Tex. 2002). But "there is no requirement that the evidence be unequivocal or undisputed." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam).

## II. The evidence introduced at the medication hearing is factually sufficient to support the order.

In determining whether psychoactive medication is in a patient's best interest, a court shall consider several factors, including "the patient's religious beliefs." *Id.* § 574.106(b)(2). In this case, the court spent most of the medication hearing listening to appellant testify about his religious beliefs. The trial court placed no limitation on appellant's counsel in the direct examination of appellant. Nor did it limit the State's cross-examination of appellant regarding his beliefs.

Dr. Stone also testified about appellant's religious beliefs. The doctor explained that if appellant had religious issues with medication, he would "certainly do everything [he could] to honor those wishes." The doctor testified that he had been unaware of appellant's beliefs prior to the hearing and that appellant's religious convictions were "a separate issue from him not being able to perceive his illness." In its "Order to Administer Psychoactive Medication," the Court stated that it had "consider[ed] all of the evidence."

Even though the trial court excluded no evidence regarding appellant's religious beliefs and stated that it "consider[ed] all of the evidence," appellant contends that the trial court failed to consider his religious beliefs. Appellant focuses upon a portion of the trial court's order that reads as follows:

> The Court *relied on* the following evidence:
> ✓    doctor's testimony
> ___    patient's testimony
> ✓    stipulation of evidence

(emphasis added). Appellant argues that the trial court's failure to check that it

5

"relied on" the "patient's testimony" indicates that the trial court did not *consider* appellant's testimony regarding his religious beliefs. We disagree.

We construe orders using the same rules of interpretation that apply to other written instruments. *Payless Cashways, Inc. v. Hill*, 139 S.W.3d 793, 795 (Tex. App.—Dallas 2004, no pet.). "If an order is unambiguous, we must construe the order in light of the literal meaning of the language used." *Id.*

Here, the fact that the trial court did not "rel[y] on" appellant's testimony in concluding that his best interest required treatment with psychoactive medication does not mean that the trial court did not consider this evidence at all. "To rely" means "to find support: depend." *Webster's Third New International Dictionary* 1919 (1993). The trial court's finding that it was in appellant's best interest to be medicated did not "find support" in appellant's testimony that taking the medication violated his religious beliefs.

To the contrary, the court found that *despite* appellant's professed religious beliefs, clear and convincing evidence established that his best interest required psychoactive medication. It does not follow that, as appellant argues, the trial court disregarded his testimony entirely in violation of the Health and Safety Code. Indeed, such a construction conflicts with the order's plain language, which explicitly states that the court considered all of the evidence.

We conclude that the trial court's unlimited admission of religious-belief evidence, as well as its statement that it considered all of the evidence, establish that the court considered appellant's religious beliefs as the Health and Safety Code mandates.[4] The Health and Safety Code did not require specific findings on

---

[4] *See M.H. v. State ex rel. M.H.*, No. 01-09-00205-CV, 2009 WL 2050988, at *4–*5 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.) (mem. op.) (rejecting argument that trial court failed to consider patient's stated preferences, religious beliefs, and the risks and benefits of proposed treatment where there was evidence that, despite these factors, treatment was in

6

all of the factors in section 574.106(b). *In re R.S.C.*, 921 S.W.2d 506, 515 (Tex. App.—Fort Worth 1996, no writ).

Moreover, clear and convincing evidence supported the trial court's finding that administering psychoactive medication was in appellant's best interest. Dr. Stone testified that appellant's abstention from psychoactive drugs had caused such severe catatonia that tests showed evidence of muscle breakdown. If appellant had not received psychoactive medication upon his admission to the hospital, Dr. Stone testified that intravenous fluids would have been necessary. Fluids would not have abated appellant's catatonia, however, so appellant's muscles could have continued to deteriorate, and the untreated catatonia may have ultimately proved fatal. This was strong evidence that appellant's best interest required continued treatment with psychoactive medication. Dr. Stone also testified that, now that he knew of appellant's religious preferences, he would "certainly do everything [he could] to honor those wishes."

The severe health consequences of not treating appellant with psychoactive medication, together with Dr. Stone's sensitivity to appellant's religious convictions, provide clear and convincing evidence that authorizing the doctor to administer psychoactive medication was in appellant's best interest. *Cf. State ex rel. D.P.*, 12-03-00005-CV, 2003 WL 21998759, at *7 (Tex. App.—Tyler Aug. 20, 2003, no pet.) (trial court is not required to defer to patient's preference on the subject of psychoactive drugs).

---

patient's best interest); *In re Prot. of M.E.S.*, No. 04-02-00614-CV, 2003 WL 1240002, at *4 (Tex. App.—San Antonio Mar. 19, 2003, no pet.) (mem. op.) (when "each of the factors—other than [patient's] religious beliefs—[wa]s encompassed by the expert testimony[,]" "the trial court considered the statutorily-mandated factors"); *State ex rel. D.P.*, No. 12-03-00005-CV, 2003 WL 21998759, at *6–7 (Tex. App.—Tyler Aug. 20, 2003, no pet.) (mem. op.) (when doctor's testimony encompassed all factors except religious beliefs, "the trial court met the obligations imposed on it by Section 574.106").

## CONCLUSION

Having held that the evidence in the record was factually sufficient to produce a firm belief or conviction that administering psychoactive medication was in appellant's best interest, we affirm the trial court's order.

/s/    J. Brett Busby
Justice

Panel consists of Justices Boyce, Jamison, and Busby.