812 S.W.2d 92 (1991)
In re J.S.C.
No. 04-91-00287-CV.
Court of Appeals of Texas, San Antonio.
July 17, 1991.
*93 Virginia Raymond, Marvin E. Prevost, Advocacy, Inc., Austin, for appellant.
Steven C. Hilbig, Crim. Dist. Atty., Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.
Before REEVES, C.J., and BUTTS and BIERY, JJ.

OPINION
PER CURIAM.
Appellant was involuntarily committed to the San Antonio State Hospital (SASH) for court-ordered temporary mental health services for a period not to exceed 90 days. The commitment order was signed following a trial to the court.
The State initially raises the question of our jurisdiction to consider this appeal. The commitment order was signed on May 15, 1991. A notice of appeal from an order of temporary commitment for mental illness "shall be filed within 10 days from the date any such order is signed." Tex.Rev.Civ.Stat.Ann. art. 5547-57(b) (Vernon Supp.1991).[1] The State claims the notice of appeal was filed on May 28, 13 days after the order was signed. Appellant contends it was filed on May 22.
Even if the notice of appeal was filed on May 28, it is timely. The tenth day following the signing of the order was May 25, a Saturday. Monday, May 27, was Memorial Day, a legal holiday. Tex.Rev.Civ.Stat. Ann. art. 4591 (Vernon Supp.1991). If the due date of an instrument is a Saturday, Sunday or legal holiday, the instrument is due on the next day which is not a Saturday, Sunday or legal holiday. Tex.R.App.P. 5(a). Tuesday, May 28, is the day after Memorial Day. Even if the notice of appeal was filed on that day, rather than the 22nd, it was filed timely. Our jurisdiction has been invoked; the State's contention is overruled.
Appellant raises five points of error. In his first two points he argues that there was no evidence or insufficient evidence that he was mentally ill as statutorily defined. He argues in his third and fourth points that there was no evidence or insufficient evidence that as a result of his mental illness he was likely to cause serious harm to himself or to others, or that he would, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress, and would continue to experience deterioration of his ability to function independently, and would be unable to make a rational and informed decision whether to submit to treatment. Finally, in his fifth point, appellant contends that the court erred in finding that SASH was the least restrictive available alternative setting for mental health treatment.
In his first two points, appellant challenges the trial court's finding of mental *94 illness. Mental illness is defined by the Code as:
an illness, disease, or condition which either:
(A) substantially impairs the person's thought, perception of reality, emotional process, or judgment; or
(B) grossly impairs behavior as manifested by recent disturbed behavior.
Article 5547-4(8). The finding of mental illness must be made on the basis of clear and convincing evidence. Article 5547-50(b).
Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.... While the state's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.
State v. Addington, 588 S.W.2d 569, 570 (Tex.1979). The appellate court must review all the evidence to determine if it was sufficient to produce a firm belief or conviction in the fact finder of the allegations pleaded. K.L.M. v. State, 735 S.W.2d 324, 326 (Tex.App.Fort Worth 1987, no writ). It is the State's burden to prove by clear and convincing evidence that appellant meets the statutory criteria for court-ordered mental health services. Khateeb v. State, 712 S.W.2d 881, 885 (Tex.App. Houston [1st Dist.] 1986, no writ).
The only witness to testify at the hearing was a Dr. Kho. The two physicians' certificates were not admitted, nor did the trial court take judicial notice of them. The sum total of Dr. Kho's testimony offered to support a finding of mental illness is:
Q Doctor, have you examined [J.S.C.]?
A Yes.
Q Are you familiar with his medical history?
A Yes.
Q What is his diagnosis?
A He carries a diagnosis of schizophrenia, undifferentiated type, chronic, and acute exacerbation.
Q Doctor, please state specific facts in support of your diagnosis.
A When he was at the MHMR Clinic, they found he was also catatonic. He was hallucinating. He was delusional and withdrawn. He was helpless. He was not able to care for himself, and he can not remember. He was admitted to SASH here; and when I saw him on the first visit, he was confused. His speech was fifty percent irrelevant. He was disoriented. He was totally out of it.
This testimony meets the standard of clear and convincing evidence that appellant is mentally ill. Dr. Kho's own observations, as well as information he received of appellant's behavior while at the MHMR Clinic reveal that appellant suffered from chronic schizophrenia, was hallucinating, was catatonic, delusional, disoriented and "totally out of it." This uncontroverted evidence establishes at least the first alternative of the mental health definitionthat appellant's illness or condition "substantially impairs" his "thought, perception of reality, emotional process, or judgment."
Appellant asserts that Dr. Kho's qualifications were not established. Our constitution provides that "[n]o person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony." Tex. Const, art. I, § 15-a. Prior to Dr. Kho's testimony, the attorney for the state and appellant's attorney ad litem agreed to stipulate to his qualifications. Appellant argues that there is no evidence of what qualifications, if any, Dr. Kho possessed, and, because the parties neglected to tell the court what those qualifications were, the court could not properly have found by clear and convincing evidence that Dr. Kho was a physician or a psychiatrist. We disagree.
We have, in the past, expressed dissatisfaction with inadequately identified medical witnesses. In Lodge v. State, 597 S.W.2d 773 (Tex.Civ.App.San Antonio), affd, 608 S.W.2d 910 (Tex.1980), both court and counsei *95 sel used the title "doctor" in addressing the witness, but there was no evidence whether he was "a general medical practitioner, a psychiatrist, or a holder of a doctorate in home economics or physical education." Id. at 776. Nevertheless we were able to assume he possessed some degree of expertise in psychiatry because he testified that he had been practicing at the state mental hospital for about nine months and had been a doctor in the field he was then in for over four years. Id.
In the present case, the totality of Dr. Kho's testimony indicates his expertise in the field of psychiatry. He stated that he had examined appellant, was familiar with his medical history, had seen him in a state hospital for the mentally ill, and had arrived at a mental health diagnosis. More importantly, appellant's attorney ad litem stipulated to his qualifications. We do not believe the ad litem would have stipulated to his qualifications had Dr. Kho merely possessed a doctorate in home economics or physical education.[2]See Article 5547-45(c)(2).
We overrule appellant's first two points of error.
Before court-ordered mental health services can be ordered, the court must find that as a result of mental illness, the person either:
(i) is likely to cause serious harm to himself; or
(ii) is likely to cause serious harm to others; or
(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed choice as to whether or not to submit to treatment....
Article 5547-50(b)(2). In points three and four, appellant challenges the evidentiary support for these findings.
Once again, me oniy eviaence oirerea on behalf of the State with regard to these elements is the testimony of Dr. Kho:
Q Is [J.S.C.] likely to cause serious harm to himself or others?
A Yes. He's not stable yet. He's still confused. He doesn't know what to do. He refuses medication.
Q Do you feel that his ability to function independently would continue to deteriorate?
A Yes. He's not able to take care of himself outside the hospital.
As with the mental illness finding, one of the three criteria of article 5547-50(b)(2) must be established on the basis of clear and convincing evidence. Article 5547-48(e) and -50(b). "The clear and convincing evidence must include expert testimony and, unless waived, evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function." Article 5547-50(c) (emphasis supplied).
Expert diagnosis alone is not sufficient to confine a patient for compulsory treatment. Moss v. State, 539 S.W.2d 936, 949-51 (Tex.Civ.App.Dallas 1976, no writ). The expert opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. Lodge, 597 S.W.2d at 779; Moss, 539 S.W.2d at 951.
Dr. Kho testified that appellant is not stable, is still confused, does not know what to do and refuses medication. He also relied upon medical records of the patient. The doctor also stated that appellant is unable to take care of himself outside the hospital. This testimony may demonstrate by inference that appellant is a danger to himself or others, and show his distress and deterioration of his ability to function. The overt behavior testified to is that appellant refuses to take medication and that he continues to be confused and *96 disoriented. The doctor concluded that appellant's condition will continue to deteriorate. While this is some evidence to meet the standard set out in article 5547-50(b)(2)(iii), it is not factually sufficient.
There is some indication in Dr. Kho's testimony that appellant presents a danger to himself or others. Instability and confusion, said to be present in appellant, could demonstrate to a doctor the person's inability to make a rational decision regarding treatment.
Dr. Kho states that appellant is "not able to take care of himself outside the hospital," but no specific facts are given to support the statement. He does not state what specific tasks appellant is unable to do. Even if the statement establishes clearly that appellant is, in fact, unable to care for himself outside the hospital, it addresses only one of the three subparts to article 5547-50(b)(2)(iii). While the State has presented some evidence to meet the standard for temporary commitment, the proof is factually insufficient to meet the standard.
If the trier of fact finds that the proposed patient meets at least one of the three criteria of article 5547-50(b)(2), the fact finder shall specify which of the three alternative criteria formed the basis of that decision. Article 5547-50(b)(2), The judgement in this case found each of the three in a disjunctive, or alternative, basis. The judgment should have specified which of the three the judge actually found, or, if she found all three, it should have stated the findings in the conjunctive, rather than in the disjunctive. This judgment, however, is merely a fill-in-the-blank form that provides no latitude for specific judicial findings based on a careful and serious examination of the evidence. A court, contemplating the drastic curtailment of a person's liberty by involuntarily committing him to hospitalization, should explain the specific bases for its decision. Khateeb, 712 S.W.2d at 885.
Appellant's fourth point of error is sustained. Given this ruling, we need not consider appellant's fifth point. The trial court's judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
NOTES
[1] Unless otherwise noted, all statutory references are to the Mental Health Code, Tex.Rev.Civ. StatAnn. arts. 5547-1 to -100 (Vernon Supp. 1991).
[2] The better procedure, even when qualifications are stipulated, is to at least outline in the record the witness's background, education and practice experience. Then there will be no question in either the trial court or the appellate courts of the witness's competence to express a medical opinion.