Affirmed and Majority and Dissenting Opinions filed October 24, 2002









Affirmed and Majority and Dissenting Opinions filed
October 24, 2002.

 

 

                                                                                                                                    

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00310-CV

NO. 14-02-00328-CV

____________

 

FOR THE BEST INTEREST AND PROTECTION OF G.H.,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the Probate Court

Galveston County, Texas

Trial
Court Cause Nos. 654 and 654A

 



 

M
A J O R I T Y   O P I N I O N

Appellant
G.H. was involuntarily committed for temporary inpatient mental health services
and administration of psychoactive medication for a period not to exceed ninety
days.  Through her attorney ad litem, she
challenges the legal and factual sufficiency to support this order.  We affirm.








The
medical records indicate G.H. has a history of bipolar disorder Awith psychotic features.@  She was brought to the emergency room of the
University of Texas Medical Branch by a mental health deputy due to disruptive
and disorganized behavior at home.  When
she arrived, she was unclean, yelling, and Awashing her hair in cold
water.@  She also was delusional, complaining that her
13-year-old grandchildren were stored in test tubes at the hospital.

At
the commitment hearing, G.H.=s
testimony showed not only that she was suffering from delusions, but that she
refused any medication to treat her condition. 
Although G.H.=s
attorney characterizes her behavior as merely Adisorganized@ and Airritable,@ the evidence clearly shows
she suffers from severe mental distress. 
The specialists who examined her so testified, and gave concrete
examples of her behavior to confirm their conclusions.  

The
trial court ordered temporary commitment, finding there was clear and
convincing evidence that G.H. was (1) likely to seriously harm herself, and (2)
experiencing a substantial deterioration of her ability to function
independently and was unable to make a rational and informed decision whether
to submit to treatment.  Tex. Health & Safety Code ' 574.034(a)(2).  To be clear and convincing, the evidence
supporting these findings must include Aa recent
overt act or a continuing pattern of behavior that tends to confirm... the
proposed patient's distress and the deterioration of the proposed patient's
ability to function.@  Tex.
Health & Safety Code '
574.034(d)(2).  

We
believe there is factually and legally sufficient evidence to support the trial
court=s
second ground.  The medical records and
testimony established delusional and disruptive overt acts, both at home and at
the emergency room, that showed a substantial deterioration of G.H.=s ability to function
independently.  It is hard to imagine how
she could function in supermarkets, retail stores, welfare or other government
offices, or public transportation with these disabilities.  

Nor
was there evidence that any friend or family member was available to help her
cope with these necessaries of daily life. 
There was no one at G.H.=s
home who could care for her; to the contrary, her elderly father had been
relying upon her to take care of him.  








Additionally,
there was evidence that G.H. was unable to make a rational and informed
decision whether to submit to treatment, and that outpatient treatment without
commitment was unlikely to be successful. 
The medical records indicate G.H. had been Ahospitalized several times
in the past@
and Ahas
been noncompliant with med[ication]s on an outpatient basis.@  The testimony at the commitment hearing
indicated she refused medications that would help her because she claimed she
was allergic to them.  While her treating
doctor admitted he had not thoroughly investigated her alleged allergies, he
testified that the type and dosage of these medications could be adjusted to
make allergies a non-issue.  The trial
court was in the best position to judge who was testifying accurately about why
G.H. was refusing the medications she needed. 

Several
courts have held a patient=s
refusal to take medication is insufficient to support temporary commitment.[1]  But others appear to recognize this refusal
may affect a proposed patient=s
ability to function and make rational decisions about treatment.[2]  We believe (1) G.H.=s refusal to take
prescribed medication, (2) her actions at home that caused her family to
contact a mental health deputy, and (3) her bizarre behavior at the emergency
room are recent overt acts that tend to confirm her distress and deteriorating
ability to function. 








Texas
law does not require relatives or physicians of the mentally ill (or the
courts) to stand idly by until serious harm occurs.  Indeed, the purpose of temporary commitment
is to avoid just such harm.  In this case
the evidence concerning G.H.=s
acts and behavior tends to confirm the trial judge=s conclusion that she was
likely to suffer substantially deteriorated ability to function independently
due to her severe mental distress, and to be unable to take the steps needed to
remedy it.  Thus, we overrule appellant=s points of error, and
affirm the trial court=s
judgment. 

 

                                                                              

 

 

/s/        Scott Brister

Chief
Justice

 

 

Judgment rendered and Majority and
Dissenting Opinions filed October 24, 2002.

Panel consists of Chief Justice Brister
and Justices Fowler and Seymore. (Seymore, J. dissenting).

Publish C Tex. R. App. P.
47.3(b). 








Affirmed
and Majority and Dissenting Opinions filed October 24, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-02-00310-CV and

  14-02-00328-CV

____________

 

FOR THE BEST INTEREST AND
PROTECTION OF G.H., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the Probate Court

Galveston County, Texas

Trial Court Cause Nos. 654 and 654A

 



 

D I S S E N T I N G   O P I N I O N

Because the evidence is legally
insufficient to support the trial court=s orders for temporary commitment to
mental health services and administration of psychoactive medications to G.H.,
I respectfully dissent. 








Before a court is allowed to take away the liberty of any
citizen, a fact finder must conclude from clear and convincing evidence that
the proposed patient is mentally ill and also establish at least one of the
additional criteria set forth in section 574.034(a)(2).  See TEX. HEALTH & SAFETY CODE ANN. ' 574.034 (Vernon Supp. 2002). 
As required by section 574.034(b), the majority concludes that G.H. had severe and abnormal mental,
emotional, or physical distress, exhibiting her inability to provide for her
basic needs or make an informed decision about whether to submit to treatment
(section 574.034(a)(2)(C)).  However, the State did not present evidence that a recent overt
act would indicate G.H. might harm herself or is unable to care for
herself.  In order to fulfill the
statutory standards for involuntary commitment, the State cannot rely solely on
a physician=s opinion that G.H. is mentally unstable.  See K.T. v. State, 68 S.W.3d 887, 894 (Tex. App.CHouston [1st Dist.] 2002, no pet.); Tex.
Health & Safety Code Ann. ' 574.034(d) (requiring evidence of recent overt act or
continuing pattern of behavior to support inpatient mental commitment).       The
majority held that (1) G.H.=s refusal to take prescribed medication; (2) her actions at
home that caused her family to contact a mental health deputy; and (3) her
bizarre behavior at the emergency room are recent overt acts that confirm her
inability to function.  

The majority has disregarded a preponderance of case authority
and precedent by suggesting that a patient=s refusal to take medications constitutes overt acts.  See Johnstone v. State, 961 S.W.2d 385,
389 (Tex. App.CHouston [1st Dist.] 1997, no writ) (holding patient=s refusal to take medication was legally insufficient as overt
act or pattern of behavior to support commitment); Broussard v. State,
827 S.W.2d 619, 621 (Tex. App.CCorpus Christi 1992, no writ) (same); In re J.S.C., 812
S.W.2d 92, 95B96 (Tex. App.CSan Antonio 1991, no writ) (holding patient=s
refusal to take mediation was factually insufficient to support
commitment).  








The majority may deem refusal to take medication, behavior at
the emergency room, and certain actions in her home to be evidence of
behavioral patterns that support commitment. 
I disagree.  In Broussard v.
State, a woman diagnosed with chronic paranoid schizophrenia had been
involuntarily committed for temporary mental health services.  827 S.W.2d 619, 620 (Tex. App.CCorpus Christi 1992, no writ).  Experts
testified as to the woman=s delusional, incoherent thoughts and her refusal to take
medications.  Id. at 621.  A doctor testified that the woman would
continue to deteriorate if not treated.  Id.  The doctor noted that the woman had six or
seven prior admissions for the same condition. 
Id. at 620.  The appellate
court found no evidence that the woman was likely to cause harm to others and
no evidence of an overt act or continuing pattern of behavior to show
deterioration of her ability to function. 
Id. at 622.  The court
reasoned that evidence merely reflecting that an individual is mentally ill and
in need of hospitalization is not evidence the statutory standard has been met.
 Id.  The court further reasoned that psychotic
behavior, alone, is insufficient to justify commitment on the grounds of mental
distress and deterioration of the ability to function independently.  Id.

The court in Broussard also required evidence of a
recent overt act or continuing pattern of behavior to prove distress and
continued deterioration of ability to function under subsection (C).  Id.; see also K.T., 68 S.W.3d
at 893 (holding that a patient=s recurring delusions that the staff was poisoning her food was
not an overt act that proved the patient could not provide for her own basic
needs).  

The San Antonio Court of Appeals dealt with a similar fact situation
in In re J.S.C., 812 S.W.2d 92 (Tex. App.CSan Antonio  1991, no writ).  In J.S.C., a doctor testified that the
male patient refused medication and that his ability to function independently
would continue to deteriorate.  Id.
at 95.  The court found the evidence
insufficient because the State did not show an overt act or continuing pattern
of behavior.  Id. at 96.  The doctor=s testimony that the patient was unable to care for himself
outside the hospital was insufficient to satisfy the statutory requirements.  The record did not include evidence of
specific overt acts to support that conclusion. 
Id. at 95B96. 








In L.S. v. State, 867 S.W.2d 838 (Tex. App.CAustin
1993, no writ), the Austin Court of Appeals found a continuing pattern of
behavior or recent overt acts to support involuntary commitment.  A doctor testified regarding three specific
patterns of behavior demonstrating the patient=s need for hospitalization: (1) burning his skin with
cigarettes; (2) drinking excessive amounts of water, causing him to gain ten
pounds in an eight-hour period; and (3) an unauthorized departure from the
psychiatric facility for six days.  Id.
at 842.  The court found the testimony
provided sufficient evidence of a continuing pattern of behavior or recent
overt acts.  Id. at 843.  I do not believe that the behavior in this
case rises to this level.  The majority contends that G.H.=s
irrational thoughts and unwillingness to take psychoactive medications suffice
as recent overt acts exhibiting inability to care for herself.  However, there was no evidence presented that
G.H. was unable to care for herself before she was involuntarily
hospitalized.  In fact, the evidence
presented tends to support the opposite conclusion.  G.H. was the sole caretaker of herself and
her elderly father for a number of years. 
Further, G.H.=s reluctance to take psychoactive medications and other
medications due to religious beliefs and allergies offers no proof of a
deteriorating mental state.  The
physician even testified he had not conducted a thorough investigation of G.H.=s
alleged allergies.  The State provided no
evidence to discredit G.H.=s reasons for refusing to take the medications.  No witnesses provided testimony regarding
G.H.=s
behavior in supermarkets, retail stores, and grocery stores, however, the
majority suggests that she cannot function in them.  This conclusion is not supported by the
record.  There is no evidence in the
record that G.H. had a difficult time completing daily tasks sufficient to
provide for her basic needs.  

I understand the majority=s reluctance to deny court-ordered treatment for a person who
is mentally ill.  However, the state
failed to adduce evidence specifically addressing G.H.=s
inability to take care of her basic needs. 
In reviewing the relevant case law interpreting subsection (C), I
conclude that the evidence was insufficient to produce in the mind of the fact
finder a firm belief or conviction as to the truth of the State=s
contentions.  See K.T., 68 S.W.3d
at 893B94;
Johnstone, 961 S.W.2d at 389; L.S., 867 S.W.2d at 843; Broussard,
827 S.W.2d at 622; J.S.C., 812 S.W.2d at 96.








The State has not produced clear and convincing evidence of a
recent overt act or continuing pattern of behavior warranting involuntary
commitment of G.H.  Evidence merely
reflecting that she is mentally ill and in need of hospitalization does not
fulfill the statutory standards.  

Accordingly, I respectfully dissent.

 

 

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed October 24, 2002.

Panel consists
of Chief Justice Brister and Justices Fowler and Seymore.

Publish C
Tex. R. App. P. 47.3(b).

 

 

 











[1]  See Johnstone v. State, 961 S.W.2d 385,
389 (Tex. App.CHouston [1st Dist.] 1997, no writ) (holding
patient=s refusal to take medication was legally
insufficient as overt act or pattern of behavior to support commitment); Broussard
v. State, 827 S.W.2d 619, 621 (Tex. App.CCorpus Christi 1992,
no writ) (same); In re J.S.C., 812 S.W.2d 92, 95-96 (Tex. App.CSan Antonio 1991, no
writ) (holding patient=s refusal to take
medication was factually insufficient to support commitment).

 





[2] See In re State for
Best Interest and Protection of K.D.C., 78 S.W.3d 543, 550 (Tex. App.CAmarillo 2002, no
pet.) (finding no evidence of overt act or pattern of behavior, but suggesting
such evidence might include discontinuance of prescribed medications); D.J.
v. State, 59 S.W.3d 352, 356-57 (Tex. App.CDallas 2001, no
pet.) (holding testimony that patient was not taking medication insufficient
without proof of what those medications were or that failure to take them would
lead to deterioration); Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.CHouston [1st Dist.]
1996, no pet.) (holding evidence that patient refused all medication, did not
believe he was ill, and lost thirty pounds in three months sufficient to
establish likelihood of serious harm to himself).