MEMORANDUM OPINION



No. 04-02-00614-CV



IN THE INTEREST AND PROTECTION OF M.E.S.





From Probate Court No. 1, Bexar County, Texas


Trial Court No. 2002MH1781


Honorable Polly Jackson Spencer, Judge Presiding (1)



Opinion by: Sarah B. Duncan, Justice


Sitting: Alma López, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: March 19, 2003


AFFIRMED

 M.E.S. appeals the trial court's judgment, which commits her to San Antonio State Hospital
for a period not to exceed ninety days and authorizes compulsory treatment with psychoactive
medications. We affirm.


Factual and Procedural Background

 While M.E.S. was at Spohn Hospital in Corpus Christi, an application for court ordered
mental health services was submitted to the County Court of Kleberg, Texas. After the court ordered
M.E.S. taken into protective custody, M.E.S. was transferred to the San Antonio State Hospital,
where she was evaluated. On August 20, 2002, a hearing was held in Bexar County on the State's
motions for temporary commitment for mental illness and to compel treatment with psychoactive
medications. At the hearing, M.E.S., as well as her treating doctor at San Antonio State Hospital,
Dr. Engles, testified. Additionally, the opinions of Drs. Harris and Rayasam were presented in the
form of a "Physician's Certification of Medical Examination for Mental Illness."

 M.E.S.'s psychiatric history includes three hospitalizations and seven years of outpatient
treatment. Drs. Engles, Harris, and Rayasam all diagnosed M.E.S. as bipolar and manic; Drs. Harris
and Rayasam characterized M.E.S.'s illness as severe with psychosis. M.E.S. demonstrated to all
three doctors that she is angry and accusatory to caregivers and other patients. Dr. Engles also
testified that M.E.S. can be very, very intrusive and agitated. In one incident at the hospital, M.E.S.
"got so intrusive with our other patients  they were ready to hit her"; and M.E.S. had to be
separated from the other patients and medicated. According to Dr. Engles, the same behaviors were
reported at the hospital in Corpus Christi. Dr. Engles described another incident immediately before
trial in which M.E.S. dug into the doctor's pocket to retrieve an ink pen in an intrusive manner and
without permission. M.E.S. stated to Dr. Harris that "[she] demand[s] things that [she] want[s]
immediately" and "come[s] on aggressive." She acknowledged to Dr. Rayasam that she has a
terrible temper and almost "lost it."

 Dr. Rayasam stated that M.E.S. exhibits severe mood shifts, hyper-talkativeness,
irrationalility, tangential conversation, and unpredictable behavior. Dr. Harris reported pressured
speech, loose associations, and confusion. Drs. Harris and Rayasam both found that M.E.S. met all
of the three statutory temporary commitment criteria. Dr. Engles testified that temporary
commitment is the least restrictive environment for M.E.S. 

 Dr. Engles also testified that M.E.S. refuses to take medications both at home and in
outpatient treatment. He explained that she will take a very small dosage, not enough to be effective.
Dr. Rayasam noted that M.E.S. refuses medications and "refuses her illness." M.E.S. testified that
she will take medication, but she is "not a guinea pig to be - give her this, give her that. And the
point is [she's] not violent if [she's] not picked on. And anybody is the same way." Contrary to her
doctors, M.E.S. testified that "[she has] always taken everything they've given [her]."

 At the conclusion of the hearing, the trial court made the requisite fact findings, granted both
motions, ordered M.E.S. committed to San Antonio State Hospital for a period not to exceed ninety
days, and further ordered compulsory treatment with psychoactive medications.

Mental Illness and Need for Temporary Commitment


 M.E.S. first argues the evidence is legally and factually insufficient to support the trial
court's finding that M.E.S. is mentally ill and in need of commitment. We disagree.

 A proposed patient may be ordered to receive temporary inpatient mental health services
only if the judge or jury finds that: 

 (1) the proposed patient is mentally ill; and

 (2) as a result of that mental illness the proposed patient:

 (A) is likely to cause serious harm to himself;

 (B) is likely to cause serious harm to others; or

 (C) is: (i) suffering severe and abnormal mental, emotional, or physical
distress; (ii) experiencing substantial mental or physical deterioration
of the proposed patient's ability to function independently, which is
exhibited by the proposed patient's inability, except for reasons of
indigence, to provide for the proposed patient's basic needs,
including food, clothing, health, or safety; and (iii) unable to make
a rational and informed decision as to whether or not to submit to
treatment.


Tex. Health and Safety Code Ann. § 574.034(a) (Vernon Supp. 2002). These findings must be
made by clear and convincing evidence, id., which is "that measure or degree of proof which will
produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established." State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). To be clear and
convincing, the evidence must include expert testimony and, unless waived, evidence of a recent
overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm
to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the
proposed patient's ability to function. Tex. Health and Safety Code Ann. § 574.034(d) (Vernon
Supp. 2002). Expert opinion recommending involuntary temporary commitment must be supported
by a factual basis; a bald diagnosis alone is insufficient to support commitment. In re J.S.C., 812
S.W.2d 92, 95 (Tex. App.-San Antonio 1991, no writ).

Standard of Review

 The United States Constitution requires the findings necessary to support involuntary
commitment for an indefinite period be made by clear and convincing evidence. Addington v.
Texas, 441 U.S. 418, 433 (1979). The burden of proof required by due process is less clear when the
commitment is for a definite period. The United States Supreme Court's reasoning in Addington
suggests the clear and convincing standard of proof is constitutionally required in all involuntary
commitments extending beyond a short observational period. See Addington, 441 U.S. 425-433. But
we need not decide this issue in this case. For purposes of this opinion, we assume the United States
Constitution requires proof by clear and convincing evidence of the facts necessary to support
involuntary temporary mental health services.

 When reviewing a finding that the United States Constitution requires the State to prove by
clear and convincing evidence, the reviewing court must look at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could have formed a firm
belief or conviction that the alleged fact is true. In re J.F.C., 46 Tex. Sup. Ct. J. 328, 333, 2002 WL
31890913, at *6 (Dec. 31, 2002). In doing so, we must assume the factfinder resolved disputed facts
in favor of its finding if a reasonable factfinder could do so. Id. The reviewing court should
disregard all evidence that a reasonable factfinder could have disbelieved or found to have been
incredible. Id.

 In reviewing a factual sufficiency challenge, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction about the truth of the State's
allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). "If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient." In re J.F.C., 46 Tex. S. Ct. J. at 334; see In re C.H., 89 S.W.3d at 25.

Discussion


 The trial court found that M.E.S. is mentally ill and likely to harm herself. These findings
are supported by the testimony of the three doctors who examined M.E.S.. Each doctor diagnosed
M.E.S. as bipolar; each recommended involuntary commitment; and each supported his diagnosis
with facts, including M.E.S.'s refusal to take appropriate dosages of the prescribed medication. We
hold this evidence is such that the trial court could have reasonably formed a firm belief or
conviction that M.E.S. is mentally ill and likely to harm herself. As we have previously stated, "[a]n
individual who cannot make a rational decision to receive treatment poses a threat to his own well-being. That person is a danger to himself precisely because the nature of his illness prevents him
from seeking treatment, which might improve his condition." Johnson v. State, 693 S.W.2d 559, 563
(Tex. App.-San Antonio 1985, no writ).

Order Compelling Treatment with Psychoactive Medications


 M.E.S. also argues the trial court failed to consider the statutorily-mandated factors; and the
trial court's findings are not supported by legally and factually sufficient evidence. We again
disagree.

 To authorize the administration of one or more classes of psychoactive medication, the court
must find by clear and convincing evidence that (1) the patient is under an order for temporary or
extended mental health services under section 574.034 or 574.035; (2) the patient lacks the capacity
to make a decision regarding the administration of the proposed medication; and (3) treatment with
the proposed medication is in the best interest of the patient. Tex. Health and Safety Code Ann.
§ 574.106(a) (Vernon Supp. 2002). In making its decision, the court must consider the following
factors:

 (1) the patient's expressed preferences regarding treatment with psychoactive
medication; 

 (2) the patient's religious beliefs; 

 (3) the risks and benefits, from the perspective of the patient, of taking
psychoactive medication; 

 (4) the consequences to the patient if the psychoactive medication is not
administered; 


 (5) the prognosis for the patient if the patient is treated with psychoactive
medication; and 


 (6) alternatives to treatment with psychoactive medication. 

Id. § 574.106(b). 

 M.E.S. contends the trial court failed to find that M.E.S. is under an order for temporary
mental health services. However, the trial court's order compelling medication clearly states on its
face that "[t]he Court finds (iv) the Patient is currently under court ordered temporary mental health
services issued under 574.034 ... and is refusing to take the medication voluntarily." M.E.S. also
contends the trial court failed to consider the section 574.106(b) factors. However, each of the
factors - other than M.E.S.'s religious beliefs - is encompassed by the expert testimony. M.E.S.
chose not to present evidence regarding her religious beliefs. See In re R.S.C., 921 S.W.2d 506, 514
(Tex. App.-Fort Worth 1996, no writ).

 We hold the trial court considered the statutorily-mandated factors; and the evidence is
legally and factually sufficient to support the findings that M.E.S. lacks the capacity to make a
decision regarding the administration of the proposed medication and that treatment with the
proposed medication is in M.E.S.'s best interest is amply supported by the expert testimony.

Due Process


 M.E.S. also contends that her due process rights were violated because Dr. Engles was never
qualified as an expert witness; and he was questioned by the trial court. However, M.E.S. admits
that these complaints were not raised in the trial court. Complaints must be asserted in the trial court
to be preserved for appellate review. See Tex. R. App. P. 33.1; Dreyer v. Greene, 871 S.W.2d 697,
698 (Tex. 1993).


Written Notification

 Finally, M.E.S. argues that the trial court failed to provide her with the written notification
required by section 574.106(g) of the Texas Health and Safety Code. We again disagree.

 The notification requirement in section 574.106(g) is met by the trial court's order to compel
psychoactive medication. See In re R.S.C., 921 S.W.2d at 515. The order states that "after
considering all of the evidence and testimony presented, the court finds that the facts alleged in the
petition are true and correct and supported by clear and convincing evidence"; the order then lists
the court's findings, tracking section 574.106(a). From this order, M.E.S. could ascertain what
evidence was relied upon and the reasons for the trial court's findings. 

 M.E.S. argues that the order is not sufficient because it is a "fill-in-the-blank" form.
However, the cases cited by M.E.S. do not apply; they merely discuss when the statutorily-mandated
findings should be listed in the conjunctive or disjunctive. See In re J.J., 900 S.W.2d 353, 356 (Tex.
App.-Texarkana 1995, no writ); In re J.S.C., 812 S.W.2d at 96. The findings in the trial court's
order are not a checklist; they are clearly in the conjunctive and in paragraph form.

 The trial court's judgment is affirmed. 

 

 Sarah B. Duncan, Justice

Publish


1. The judgment for court ordered temporary mental health services and the order compelling psychoactive
medications were signed by the Honorable Polly Jackson Spencer, Presiding Judge of Probate Court No. 1, Bexar County,
Texas, the court in which this cause was pending. However, the hearing was held in Bexar County Probate Court No.
2, and the Honorable Tom Rickhoff, presiding judge of that court, conducted the hearing and orally ordered the temporary
commitment and administration of medication.