NO.
12-06-00142-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
C.S.         §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            C.S. appeals
from an order of commitment for temporary inpatient mental health services and
an order to administer psychoactive medication. 
After a hearing without a jury, the trial court ordered C.S. committed
to Rusk State Hospital for a period not to exceed ninety days and entered an
order authorizing the Texas Department of Mental Health and Mental Retardation
to administer psychoactive medication to C.S. 
In two issues, C.S. asserts the evidence is legally and factually
insufficient to support the order of commitment and the trial court erred in
granting the State’s application to administer psychoactive medication.  We affirm.

 

Background

            On
April 17, 2006, an application for court ordered temporary mental health
services was filed requesting the court commit C.S. to Rusk State Hospital for
a period not to exceed ninety days.  The
application was supported by a certificate of medical examination for mental
illness, prepared by a physician, Dr. C. Cuellar, who had examined C.S. on
April 13.  Dr. Cuellar diagnosed C.S. as
suffering from schizoaffective disorder. 
He found that C.S. is mentally ill and likely to cause serious harm to
himself and others.  








            Dr.
Cuellar reached these conclusions because, on April 12, C.S. had threatened to
kill family members.  Dr. Cuellar found
that C.S. presents a substantial risk of serious harm to himself or others if
not immediately restrained, an opinion he based on C.S.’s behavior and on
evidence of severe emotional distress and deterioration in C.S.’s mental
condition to the extent he cannot remain at liberty.  Dr. Cuellar formed this opinion because C.S.
threatened to kill family members.

            On
April 14, 2006, C.S. was examined by Dr. Larry Hawkins who then also prepared a
certificate of medical examination for mental illness.  Dr. Hawkins diagnosed C.S. with psychosis NOS
and indicated that C.S. is mentally ill and likely to cause serious harm to
himself and others.  He further
determined that C.S. is suffering severe and abnormal mental, emotional, or
physical distress, is experiencing substantial mental or physical deterioration
of his ability to function independently, which is exhibited by his inability
to provide for his basic needs, and he is unable to make a rational and
informed decision as to whether or not to submit to treatment.  He came to these conclusions because C.S. was
guarded, suspicious, and denied all symptoms. 
C.S. believed others lie about him. 


            On
April 17, 2006, C.S. was examined by Dr. Jon A. Guidry who also prepared a
certificate of medical examination for mental illness.  Dr. Guidry diagnosed C.S. with psychosis NOS,
with a history of methamphetamine abuse. 
He noted that C.S. refuses treatment. 
Dr. Guidry indicated that C.S. is mentally ill and is likely to cause
serious harm to others.  The basis for
this opinion is C.S.’s denial of the allegation that he threatened to kill his
brother in law and his statement that “I wouldn’t eat dinner, they must have
thought I was in a hunger strike.”  Dr.
Guidry also indicated that C.S. presents a substantial risk of serious harm to
himself or others if not immediately restrained, which is demonstrated by C.S.’s
behavior.  The basis for this opinion was
C.S.’s statement that “I don’t want him to know the court date.”  Also, his opinion was based on C.S.’s
behavior.  C.S. self conversed and
appeared to be responding to auditory hallucinations, yet denied their
presence.

            Dr.
Guidry testified at the hearing, explaining that he diagnosed C.S. with
psychosis not otherwise specified, with a history of methamphetamine
abuse.  He testified that C.S. is likely
to cause serious harm to others.  The
doctor reached this conclusion based on a review of the information on the
application for emergency detention, from examination of and discussions with
the patient, and by observing the patient. 
He explained that C.S. remains psychotic, self converses, and sits in
the doctor’s office talking to unseen persons. 
C.S. would not allow the doctor to contact the people he allegedly
threatened to harm.  The doctor’s
diagnosis was based on his examination of C.S., review of the medical history,
and reasonable medical probability.  He
estimated that, once C.S. is on medications, he would need to remain in the
hospital for three or four weeks.  The
doctor stated that Rusk State Hospital is the least restrictive available
option for C.S. at this time and treatment at the hospital is in his best
interest.  

            On
cross examination, Dr. Guidry testified that he has not observed C.S. perform
any overt act of intent to harm himself at the hospital.  Further, there have been no reports of any
overt act that would indicate his likelihood to cause serious harm to
others.  The doctor testified that C.S.
has the ability to take care of his basic needs outside the hospital.

            On
redirect, the doctor explained that C.S. told him he had not engaged in a
hunger strike or been missing meals. 
However, C.S. is very underweight, a sign he has not been caring for
himself.  The records indicate he had
engaged in a hunger strike at home. 
Also, C.S. has bradycardia, a low heart rate.  Dr. Guidry testified that if not treated for
mental illness, C.S. will either end up in jail or return to the hospital. The
doctor explained that the allegations were that C.S. had religious
delusions.  He believed he was God and
when people did not endorse that belief, he either stopped eating or threatened
to harm them. Further, if not treated for his psychiatric illness, his physical
health will deteriorate.  The doctor
testified that Rusk State Hospital is the least restrictive available medical
treatment option for C.S., and he would need to remain at the hospital three to
four weeks after medications are initiated.

            Upon
questioning by the court, Dr. Guidry explained that, most likely, the physical
symptoms are caused by a combination of poor nutrition and methamphetamine
abuse.  The doctor stated that this
places C.S. at risk for his personal health. 
He does not know what is causing the bradycardia.

            On
further cross examination, Dr. Guidry stated that C.S.’s weight loss “is a
result of either delusions forcing him not to eat or methamphetamine abuse, and
those are both mental illnesses.”  He
repeated that, in the hospital, he has seen no evidence of the likelihood that
C.S. would cause harm to himself or serious harm to others.  Again, he stated C.S. is able to provide for
his basic needs outside the hospital.

            On
further redirect, the doctor was asked what is the cause of C.S.’s refusal to
allow him to contact anyone regarding his health.  Dr. Guidry explained that he thinks C.S. is
trying to hide something.  C.S. told him
he did not want “them” to know the court date. 
The doctor testified that the fact that C.S. did not want him to
investigate his physical symptoms and their causes suggests that he is paranoid
and does not want others knowing about him. 
On recross, the doctor conceded that it could be that C.S. does not like
his family or is a private person who does not want his family to be at the
hearing.

            Upon
questioning by the court, Dr. Guidry said discovery of C.S.’s prior medical
records would be extremely helpful in the diagnosis and treatment of the
cardiac problems.  The records would tell
the doctor if the condition is benign or something that is newly developed and
in need of further investigation.  

            C.S.
testified in his own behalf.  He said he
is a professional bull rider.  He denied
going on a hunger strike or wanting to harm himself or anyone else.  C.S. said he had never threatened to harm
anyone else.  If released, he would live
in his mobile home.  To make money, in
addition to bull riding, he does odd jobs and drives a truck.  The money he makes is sufficient to pay room
and board, utilities, and clothing.  He
does his own shopping and gets fast food. 
He does his own household chores and yard work.  He does not believe he needs to be in the
hospital for any reason.  If he had a
broken arm, he would go to the emergency room. 
If his mobile home were on fire, he would call the fire department and
the police.  He denied being on any type
of medication and said he tries to eat three times a day.  He is 5' 8" tall and weighs 128 pounds.  That is his normal weight.  He has friends he sometimes socializes with. 

            On
cross examination, C.S. said he refuses to allow the doctor or staff to contact
his family because he is a grown man and it is none of their business.  He does not want to give the doctor his
medical history concerning his bradycardia because it is none of the doctor’s
business.  He explained that if he wanted
to go to a doctor and have it checked, he would have gone himself.  C.S. said he can run a mile and has no
concern about his heart rate.  He refused
the medication ordered by Dr. Cuellar because he feels he does not need
it.  When asked if he feels his medical
opinion is superior to the doctors’ opinions he said no, but he was not taking
the medication.  He explained that, while
in the hospital, one of the other patients jumped out of bed and tried to bite
him.  C.S. ran down the hall to get
away.  He did not tell anyone the reason
he ran down the hall until the day of the hearing because no one asked.  While in the hospital, he received a letter
from his mother, which angered him.  When
asked why, he said “because they want medication.”  

            C.S.
admitted to previous use of methamphetamines. He denied threatening to kill his
brother in law.  He denied having walked
in the street in traffic.  He said he is
a religious person and he knows he is not Jesus.  He admitted quitting a carpentry job but when
asked why, he declined to answer, saying it had nothing to do with being in the
hospital for mental illness.  In response
to counsel’s statement that the records indicate he was fired because he would
sit in his truck and talk to himself, C.S. said he might have been listening to
the radio.  He denied being fired.  On redirect, C.S. said he sometimes sings
with the radio and it could appear that he was talking to himself.

 
          The trial court entered
an order for temporary inpatient mental health services after determining that
the evidence supports the allegations that C.S. is mentally ill and that he is
likely to cause serious harm to himself and others.  The court ordered C.S. committed to Rusk
State Hospital for a period not to exceed ninety days.  

            A
separate hearing was then held on the State’s application for court ordered
administration of psychoactive medication. 
Dr. Guidry testified as to C.S.’s need for medication and C.S.’s refusal
to take it.  At the close of evidence,
the court entered an order to administer psychoactive medication for the period
of temporary commitment.

 

Commitment
Order

            In
his first issue, C.S. asserts the evidence is neither legally nor factually
sufficient to support the order of commitment. 
He contends that the evidence does not show that he is mentally
ill.  He also argues that the evidence
does not show an overt act or continuing pattern of behavior tending to confirm
that he is likely to cause serious harm to himself or others.  Thus, he argues, the State failed to meet its
evidentiary burden under the statute. 

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all of the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  The reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id.  A court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id.

            In
addressing a factual sufficiency of the evidence challenge, we must consider
all the evidence in the record, both that in support of and contrary to the
trial court’s findings.  In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002).  This
court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing.  Id. at 25.  We must determine whether the evidence is
such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations.  Id.  We must consider whether disputed evidence is
such that a reasonable trier of fact could not have reconciled that disputed
evidence in favor of its finding.  In
re J.F.C., 96 S.W.3d at 266. 
Appellate courts retain deference for the constitutional roles of the
factfinder.  In re C.H., 89
S.W.3d at 26.  The trier of fact is the
exclusive judge of the credibility of the witnesses and the weight to be given
their testimony.  See id. at
27; In re J.J.O., 131 S.W.3d 618, 632 (Tex. App.–Fort Worth 2004,
no pet.).

Applicable Law 

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and convincing
evidence, that the proposed patient is mentally ill and, as a result of the
mental illness he is likely to cause serious harm to himself, is likely to
cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or
physical deterioration of his  ability to
function independently, which is exhibited by his inability, except for reasons
of indigence, to provide for his basic needs, including food, clothing, health,
or safety, and (iii) unable to make a rational and informed decision as to
whether or not to submit to treatment.  Tex. Health & Safety Code Ann. §
574.034(a) (Vernon 2003).  “Mental
illness” means an illness, disease, or condition, other than epilepsy, senility,
alcoholism, or mental deficiency, that substantially impairs a person’s
thought, perception of reality, emotional process, or judgment, or grossly
impairs behavior as demonstrated by recent disturbed behavior.  Tex.
Health & Safety Code Ann. § 571.003(14) (Vernon Supp. 2006).  To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a
recent overt act or a continuing pattern of behavior that tends to confirm
either the likelihood of serious harm to the proposed patient or others, or the
proposed patient’s distress and the deterioration of his ability to
function.  Tex. Health & Safety Code Ann. § 574.034(d) (Vernon
2003).

Discussion

            The
State provided expert testimony explaining that C.S. is mentally ill and
describing his behavior.  Dr. Cuellar
stated in his certificate of medical examination that C.S. threatened to kill
family members.  Dr. Hawkins stated in
his certificate that C.S. was guarded and suspicious, believing others lie about
him, and that he denied all symptoms. 
Dr. Guidry stated in his certificate that C.S. refused treatment, denied
threatening his brother in law, and said he would not eat dinner.  Also, C.S. did not want family members to
know the court date, he self conversed, and appeared to be responding to
auditory hallucinations while denying their presence.

            Dr.
Guidry testified that C.S. is psychotic, self converses, and hallucinates.  He sits in the doctor’s office talking to
unseen persons.  He explained that C.S.
is very underweight, a sign he has not been caring for himself.  The records show he had engaged in a hunger
strike at home.  Also, C.S. had used
methamphetamines.  Dr. Guidry explained
that C.S. has religious delusions that lead to either his refusal to eat or his
threatening others.  The combination of
methamphetamine use and poor nutrition put his personal health at risk.  The evidence supports a finding that C.S. is
mentally ill as it shows that his perception of reality is substantially
impaired.  See Tex. Health & Safety Code Ann. §
571.003(14); In re J.S.C., 812 S.W.2d 92, 94 (Tex. App.–San
Antonio 1991, no writ).  Additionally,
this is expert testimony of a continuing pattern of behavior, hallucinations
and delusions that lead to his refusal to eat, showing that C.S. is likely to
cause serious harm to himself.  The trial
court could have disbelieved C.S.’s testimony to the contrary.  See In re J.F.C., 96 S.W.3d at
266. 

            Considering
all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that the
finding that C.S. is likely to cause serious harm to himself is true.  Id.  The evidence presented satisfies the
statutory requirement for clear and convincing evidence in support of the order
for temporary inpatient mental health services. 
See Tex. Health &
Safety Code Ann. § 574.034(d). 
The evidence is legally sufficient to support the trial court’s
order.  See In re J.F.C., 96
S.W.3d at 266.  

            In
addressing C.S.’s factual sufficiency complaint, we consider the evidence the
factfinder could reasonably have found to be clear and convincing.  In re C.H., 89 S.W.3d at
25.  C.S. testified that he considered
himself an athlete because he rides bulls. 
He denied participating in a hunger strike and said his weight was
normal for him.  He said he does not need
to be in the hospital and does not need medication.  He also testified that he does not think he
is Jesus.  The trial court was entitled
to disbelieve C.S.’s testimony and disregard evidence contrary to the State’s
position.  See id. at
27.  In light of the entire record, the
evidence that the trial court could not have credited in favor of its findings
is not so significant that it could not reasonably form a firm belief or
conviction that C.S. is mentally ill and is likely to cause serious harm to
himself.  See id.  Thus, the evidence is factually sufficient to
support these trial court findings. 
Because we hold the evidence is both legally and factually sufficient to
support the trial court’s order, we overrule C.S.’s first issue.

 

Psychoactive
Medication

            In
his second issue, C.S. asserts the trial court erred in entering an order
authorizing administration of psychoactive medication.  He argues that such an order must be based on
a valid order for inpatient mental health care and, due to the reasons asserted
in his first issue, the trial court’s order for inpatient mental health care is
not valid.    

            The
court may enter an order authorizing the administration of psychoactive
medication if it finds by clear and convincing evidence that the patient is
under an order for inpatient mental health services, the patient lacks the
capacity to make a decision regarding the administration of the proposed
medication, and treatment with the proposed medication is in the best interest
of the patient.  Tex. Health & Safety Code Ann. § 574.106(a) (Vernon Supp.
2006).

            Having
found the evidence sufficient to support the trial court’s order of commitment,
we have determined that the trial court’s order for temporary mental commitment
is valid.  Therefore, we reject C.S.’s
argument that the order authorizing administration of psychoactive medication
is invalid on that basis.  See id.  We overrule C.S.’s second issue.

 

Conclusion

            The
evidence is legally and factually sufficient to support the trial court’s order
of commitment for temporary inpatient mental health services.  Further, the trial court did not err in
ordering administration of psychoactive medication.

            We
affirm the trial court’s orders of commitment for temporary
inpatient mental health services and for administration of psychoactive
medication. 

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered September 29, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)