

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00249-CV
No. 04-13-00250-CV

The **STATE** of Texas for the Best Interest and Protection of **B.C.** as a Mentally Ill Person

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2013MH0904 & 2013MH0849
Honorable Polly Jackson Spencer, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  July 10, 2013

AFFIRMED

        This is an appeal from the trial court's order of temporary commitment for inpatient mental health services and for the administration of psychoactive medication.  In two issues on appeal, appellant, B.C., contends (1) the evidence is legally and factually insufficient to order the temporary commitment of B.C. for inpatient mental health services, and (2) because the evidence is insufficient to commit him, the evidence is legally and factually insufficient to compel the administration of psychoactive medication to B.C.  We affirm.

---

[1] The Honorable Polly Jackson Spencer is the presiding judge of the Probate Court No. 1 of Bexar County.  However, Associate Judge Oscar Kazen presided over B.C.'s temporary commitment hearing and administration of psychoactive medication hearing and signed both orders in this case.

## SUFFICIENCY OF THE EVIDENCE

A trial court may order a patient to receive court-ordered temporary mental health services only if the trier of fact finds, by clear and convincing evidence, that the patient is (1) mentally ill and:

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010).

A court may issue an order authorizing the administration of psychoactive mediations if it finds, by clear and convincing evidence, that (1) the patient is under a court order to receive inpatient mental health services, (2) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment, and (3) the treatment with the proposed medication is in the best interest of the patient. *Id*. § 574.106(a), (a-1).

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). To constitute clear and convincing evidence under Texas Health and Safety Code section 574.034(a), "the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a

continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE § 574.034(d). The trial court must specify which criterion listed in subsection (a)(2) forms the basis for the decision to order temporary commitment. *Id*. § 574.034(c). Expert opinion of a diagnosis is not sufficient to support commitment. *In re J.S.C.*, 812 S.W.2d 92, 95 (Tex. App.—San Antonio 1991, no writ). Instead, the expert opinion recommending commitment must be supported by a factual basis. *Id*.

"In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Evidence is legally insufficient if, after conducting a legal sufficiency review, it is determined that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true. *Id*.

When reviewing for factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id*. We review all evidence in the record, both supporting and opposing evidence. *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002). The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *J.F.C.*, 96 S.W.3d at 266. However, we may not

substitute the trial court's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

## 1. Sufficiency of the evidence to order the temporary commitment

In his first issue, B.C. contends the evidence is both legally and factually insufficient to support the trial court's order of temporary commitment.

Here, the trial court's written order found that B.C. is mentally ill[2] and found affirmative findings under subsections (B) and (C) of section 574.034(a)(2). Specifically, the trial court found, under subsection (B), that B.C. is likely to cause serious harm to others, and, under subsection (C), that B.C. is suffering severe and abnormal mental, emotional or physical distress; is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety; and unable to make a rational and informed decision as to whether or not to submit to treatment.

B.C. contends the trial court found him likely to cause serious harm to others without any direct testimony of a recent overt act or continuing pattern of behavior. *See* TEX. HEALTH & SAFETY CODE § 574.034(d) (requiring evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to others). B.C. asserts the testifying expert, Dr. Ed Gonzalez, did not personally observe any recent overt act or continuing pattern of behavior that tended to confirm B.C. was a danger to others and, thus, there was no direct evidence of a recent overt act. We disagree with B.C.'s argument.

---

[2] B.C. does not challenge the trial court's finding that he was mentally ill.

Dr. Gonzalez, a staff psychiatrist at the Baptist Hospital, was the only witness to testify at the hearing. Dr. Gonzalez testified he usually sees B.C. every day and has diagnosed B.C. with "bipolar manic." Dr. Gonzalez testified B.C. suffers from delusions, he believes his food is being poisoned, and he has a "grandiose delusion" that he is going to take everyone at the hospital to Paris for a special dinner. The State asked Dr. Gonzales, "And is your opinion based on personal knowledge, his history, and the patient's medical records?" Dr. Gonzalez replied, "Yes." As to B.C.'s likelihood of causing harm to others, Dr. Gonzalez testified without objection as follows:

Q:     As a result of his mental illness, do you feel this patient is likely to cause serious harm to others?

A:     Yes.

Q:     And based on what you personally witnessed and then your personal interactions with the patient and what you've seen on the unit, why do you feel he would cause harm to others?

A:     He approaches patients in a very inappropriate way. He would go right in front of the face and intimidating and touching the individual, the person inappropriately. And usually the patient doesn't like that and they become very angry at him, and some of them actually threaten him, to hit him.

Q:     Okay. And is this — have you witnessed any inappropriate sexual behavior towards females?

A:     Yes. Yes. He was placed in seclusion the other day because he was told to stay away from female patients and then he would go and started to touch the patient inappropriately, the leg, the arms, and he was told several times and then he didn't do what he was asked and he was making some very inappropriate sexual comments and some very — very inappropriate. And he was placed in the seclusion room. He became very angry and started to destroy the property inside.

Q:     Okay. And has he ever made threats to staff?

A:     Yes.

Q:     And what threats did you —

A:     He would say, "You will be sorry."

Q:     Is he allowed to shave on the unit?

A:     No.

Q:     And why is that?

A:     Yeah, because the possibility that he may use anything against him and maybe toward other people.

Later, again without objection, Dr. Gonzalez testified B.C. had to be given emergency medications when he was in seclusion because he became agitated and angry to the point he destroyed property, including a mattress and a door, inside the room.

On cross examination, B.C.'s counsel asked Dr. Gonzalez whether he had personally witnessed B.C.'s confinement in the seclusion room or if he had personally witnessed B.C. making inappropriate comments and touching patients. Dr. Gonzalez answered that he had not personally been there for those occurrences. However, Dr. Gonzalez testified he sees B.C. "usually every day" and that his opinion was based on personal knowledge, B.C.'s history, and on B.C.'s medical records. The statute only requires clear and convincing evidence, which "must include expert testimony and . . . evidence of a recent overt act or a continuing pattern of behavior that tends to confirm" the likelihood of serious harm to others. TEX. HEALTH & SAFETY CODE § 574.034(d).

In reviewing all the evidence in the light most favorable to the finding, we determine a reasonable factfinder could have formed a firm belief or conviction that B.C. posed a danger to others. *See K.E.W.*, 315 S.W.3d at 20. B.C. made threats to staff members, touched others inappropriately, got close to their faces in an intimidating manner, and made inappropriate sexual comments to women at the facility for which he was placed in the seclusion room after refusing to stop. Once in seclusion, according to Dr. Gonzalez, B.C. became angry and destroyed a mattress and a door. A reasonable factfinder could find that such offensive behavior to others—touching without permission and making inappropriate sexual comments—could likely lead to B.C. causing serious harm to others. Accordingly, we conclude the evidence was legally sufficient to find that

B.C. is likely to cause serious harm to others and, therefore, supported an order of temporary commitment under subsection (B) of section 574.034(a)(2).

Additionally, in reviewing all the evidence, both supporting and disputed, we conclude the trial court could have reasonably formed a firm conviction or belief that B.C. was likely to cause harm to others. *J.F.C.*, 96 S.W.3d at 266. Accordingly, we conclude the evidence was factually sufficient to find that B.C. is likely to cause serious harm to others and, therefore, supported an order of temporary commitment under subsection (B) of section 574.034(a)(2).[3]

## 2. Sufficiency of the evidence to order the administration of psychoactive medications

B.C. also contends the evidence was legally and factually insufficient to support the trial court's order to administer psychoactive medications to B.C. The only basis on which B.C. challenges the medication order is the sufficiency of the evidence to commit him. B.C. asserts that because the evidence was legally and factually insufficient to commit him, the trial court could not compel medication. *See* TEX. HEALTH & SAFETY CODE § 574.106(a)(1) (requiring clear and convincing evidence that the patient is under a court order to receive inpatient mental health services in order to compel administration of medication).

Because we have concluded the evidence was legally and factually sufficient to support an order of temporary inpatient commitment under section 574.034(a), and that is the only basis on which B.C. challenges the medication order, we also affirm the medication order.

---

[3] Section 574.037(a) only requires that the finder of fact determine from clear and convincing evidence that (1) the patient is mentally ill and, as a result of that illness, (2) a finding under either subsection (A), (B), *or* (C). *See* § 574.034(a)(2) (emphasis added). Because we have concluded the evidence was sufficient to support the trial court's finding under subsection (a)(2)(B) that B.C. was likely to cause serious harm to others, we will not analyze whether the evidence was sufficient to support the trial court's finding under subsection (a)(2)(C). *Mezick v. State*, 920 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("[O]nly one statutory criterion must be met under section 574.034(a)(2) to form the basis of the court's order for temporary mental health services.").

**CONCLUSION**

We overrule B.C.'s issues on appeal and affirm the trial court's orders.


Sandee Bryan Marion, Justice